Commonwealth *v.* Bighum, Appellant.

Argued April 27, 1972. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Peter A. Galante,* for appellant.

*William J. Stevens,* Assistant District Attorney, with him *J. Bruce McKissock* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First As-

sistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, July 2, 1973:

In February of 1970, a jury found appellant guilty of first degree murder and fixed the penalty at death. After appellant's post-trial motions were denied, sentence was imposed and this direct appeal followed.

Appellant raises several objections. After careful consideration, we find them to be without merit and we now affirm, subject to the modification of the sentence which will be discussed infra.

The first assignment of error is the trial judge's refusal of a motion for binding instructions premised upon a lack of jurisdiction. The evidence showed that the incident giving rise to this prosecution began on the evening of September 12, 1967, on the parking lot of the United States Post Office located at Ninth and Chestnut Streets, Philadelphia. At approximately 10:55 p.m., the appellant confronted Mr. Huber, his supervisor at the Post Office, in an alleyway by the parking area. Appellant grabbed Mr. Huber and fired two shots at him. He then forced Mr. Huber into his car and drove to Eleventh and Cherry Streets, within the City of Philadelphia, where he again fired four or five shots at Mr. Huber. The victim was found unconscious and bleeding at the latter location and died a short time later at a nearby hospital.

Appellant asserts that, as a matter of law, the Commonwealth failed to show that the fatal wounds were inflicted within the City and County of Philadelphia; rather, he maintains that the situs of the fatal wounds was a United States Post Office, a Federal Government reservation, and therefore jurisdiction lies exclusively in the Federal Courts.[1] "Acts done outside

---

[1] Under the Act of June 13, 1883, P. L. 118, §1, *as amended,* 74 P.S. §1, the jurisdiction of Pennsylvania is ceded to the United

a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm. . . ." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911). See also, *Commonwealth v. Thomas*, 410 Pa. 160, 167-8, 189 A. 2d 255 (1963), *cert. denied*, 375 U.S. 856 (1963). The evidence presented at trial unquestionably established not only that death occurred in the City of Philadelphia[2] but more importantly that a number of the fatal wounds were in fact inflicted within the city limits.

Four witnesses who were present at the Ninth Street Post Office on the evening of September 12, 1967, testified that at about 11:00 p.m., they heard two noises that sounded like shots. In his pre-trial statement, appellant admitted that he drove Huber from the Post Office to Eleventh and Cherry Streets, where he proceeded to "empty the pistol into him". The Medical Examiner testified that he performed the autopsy on the decedent and found that the decedent had suffered a total of six bullet wounds about the head and neck. He testified further that four or five of these wounds were sufficient, individually, to cause death. Thus, even if both of the shots fired on Post Office grounds resulted in fatal wounds, the evidence is uncontradicted that at least two additional fatal wounds were inflicted after Huber was transported from the Post Office grounds. Since it was established that at least two of the fatal wounds were sustained within the territorial jurisdiction of Philadelphia while the victim was yet

---

States over all parcels of land not exceeding ten acres that have been acquired by the United States for the purpose of erecting post offices, custom houses or other structures exclusively owned by and used for the general government.

[2] We note that, under the new Pennsylvania Crimes Code, Act of December 6, 1972, P. L. 660, 18 P.S. §102(a)(1), (c), jurisdiction over homicide cases may attach merely because the victim died in this Commonwealth.

alive, the court was justified in finding jurisdiction and dismissing the motion for binding instructions.

In a somewhat related argument, the appellant urges that the trial judge erred in failing to specifically instruct the jury on the law concerning jurisdiction. Jurisdiction is a legal issue and therefore is not normally a concern for the jury. However, in those infrequent cases where jurisdiction depends upon the resolution of disputed facts, it is within the province of the jury to resolve the issue under proper instructions, and failure to give such instructions may constitute reversible error. *Commonwealth v. Mull*, 316 Pa. 424, 175 A. 418 (1934). Where the facts underlying jurisdiction are not in dispute, the rule is as follows: "There is no duty on a trial judge to charge a jury upon law which has no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at the trial: Commonwealth v. Coleman, 402 Pa. 238, 166 A. 2d 525 (1961)." *Commonwealth v. Whiting*, 409 Pa. 492, 498, 187 A. 2d 563, 566 (1963).

From our discussion of appellant's point concerning binding instructions, it is apparent that the facts of this case are such that no reasonable man could fail to find that jurisdiction vested in Pennsylvania and that venue was properly within the Court of Common Pleas of Philadelphia County. The appellant's reliance upon *Commonwealth v. Mull, supra,* where the facts supporting venue were substantially at issue, is therefore misplaced.

*Mull* is also inapposite because in that case, the defendant's requested charge was refused. Here, it is admitted that there was no specific request for a charge on jurisdiction, nor was any objection made to the trial judge's failure to give such a charge.

Whether we adopt the view that a portion of a charge or omission therefrom may never be assigned as

error unless specific objections are made thereto before the jury retires to deliberate,[3] or the view that failure to specifically object does not preclude a defendant from relief where the charge or omission constitutes basic and fundamental error,[4] the same result obtains in this case, because even under the latter view, appellant cannot prevail. Where the facts overwhelmingly support jurisdiction, it is certainly not basic and fundamental error not to charge the jury on the issue. See generally, *Commonwealth v. Sloat*, 298 Pa. 10, 147 A. 834 (1929); *Commonwealth v. Lawrence*, 282 Pa. 128, 127 A. 465 (1925).

Appellant next challenges the trial judge's refusal to challenge a prospective juror, one Thomas Barr, for cause. As we have stated: "The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence, and this is to be determined by the discretion of the trial judge, based upon the juror's answers and demeanor. . . . Nothing short of a palpable abuse of discretion justifies a reversal in passing on a challenge for cause. . . ." *Commonwealth v. Gelfi*, 282 Pa. 434, 437-8, 128 A. 77 (1925). (Citations omitted.) *Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 140, 149 A. 2d 434 (1959).

The record of voir dire shows that Mr. Barr originally expressed some reservation about serving on the jury because he was enrolled in evening courses at Drexel University. After being informed that a Court order to appear for jury duty would be considered a sufficient hardship to avoid the effect of Drexel's rule

---

[3] See Pa. R. Crim. P. 1119(b); *Commonwealth v. Steele*, 448 Pa. 518, 520 n.1, 295 A. 2d 334 (1972); *Commonwealth v. Baiardi*, 445 Pa. 353, 356, 284 A. 2d 796 (1971).

[4] *Commonwealth v. Pierce*, 446 Pa. 479, 482, 288 A. 2d 807 (1972); *Commonwealth v. Butler*, 442 Pa. 30, 31-32, 272 A. 2d 916 (1971), and cases cited therein.

prohibiting three consecutive absences, Mr. Barr stated that he could listen to the testimony, abide by the court's instructions, and give the appellant and the Commonwealth a fair trial. The original hesitancy of the prospective juror to accept the responsibility before ascertaining its effect upon his scholastic career is certainly understandable and is obviously not a basis for a challenge for cause where it is apparent that after clarification from the court the juror was satisfied that he could perform his function.

The next assignment of error concerns a statement made by the prosecutor during his summation to the jury. The record shows that the prosecutor divided his summation of the facts into two categories: evidence and inferences from statements which the defendant gave to investigating officers; and evidence from other sources. After summarizing the latter category, the prosecutor wished to emphasize that such evidence was sufficient by itself to convict. He then stated: "All of this again is evidence without a word from the defendant. . . ." Defense counsel objected and the prosecutor immediately explained that he was referring to the appellant's pre-trial statements. "I refer, of course, ladies and gentlemen, to, before we had even had any statement from the defendant, the statement I am referring to that we later obtained through Arnold and Revell. All of this is independent outside evidence looking in without going into what the defendant had to say."

When taken in context, we do not feel that the prosecutor's statement rises to the level of an adverse comment upon the appellant's failure to take the stand.[5] Rather, the prosecutor made a bona fide attempt to

---

[5] Cf., *Commonwealth v. Davis*, 452 Pa. 171, 305 A. 2d 715 (1973) where the prosecutor several times referred to the evidence as "uncontroverted", and *Commonwealth v. Reichard*, 211 Pa. Superior Ct.

convince the jury that it could return a verdict of guilty even without the use of appellant's pre-trial statements. In addition, the judge cautioned that the neglect or refusal of the defendant actually on trial in a criminal court to offer himself as a witness cannot be treated as creating any presumption against him. We find this assignment to be without merit.

It is next advanced that the appellant was denied a fair trial under the Due Process Clause of the Fourteenth Amendment of the United States Constitution by being coerced not to take the stand. It is appellant's position that although he wished to take the stand during his trial and testify in his behalf, he was prevented from doing so because of his wish to keep from the jury the fact of his prior convictions of felonies or misdemeanors in the nature of *crimen falsi.* He now contends that the deterrent effect of the rule which permits the introduction of prior convictions to impeach the credibility of a defendant-witness is offensive to due process and denied him a fair trial.

Although the statutory law of this jurisdiction expressly prohibits a defendant in a criminal case from being cross-examined as to other crimes he may have committed with two exceptions,[6] our decisional law

---

55, 233 A. 2d 603 (1967) where the prosecutor stated, "I ask you one thing, did you hear one word of denial."

[6] Act of March 15, 1911, P. L. 20, §1, 19 P.S. §711 provides:

"Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or charatcer, or has

has made it clear that the Commonwealth may introduce in rebuttal evidence of prior convictions to attack the credibility of a defendant who has elected to testify in his own behalf. *Commonwealth v. Butler*, 405 Pa. 36, 173 A. 2d 468 (1961); *Commonwealth v. Kostan*, 349 Pa. 560, 37 A. 2d 606 (1944); *Commonwealth v. Harvie*, 345 Pa. 516, 28 A. 2d 926 (1942); *Commonwealth v. Yeager*, 329 Pa. 81, 196 A. 827 (1938); *Commonwealth v. Quaranta*, 295 Pa. 264, 145 A. 89 (1928); *Commonwealth v. Dorst*, 285 Pa. 232, 132 A. 168 (1926).

Focusing first upon the constitutional claim, we are confident from a study of comparatively recent U. S. Supreme Court decisions that the rule does not offend due process. In *Spencer v. Texas*, 385 U.S. 554 (1967), reh. denied, 386 U.S. 969 (1967), the Supreme Court rejected a due process claim based on the introduction of prior offenses before adjudication of the offense charged under a multiple offenses statute. Mr. Justice HARLEN, expressing the views of five members of the Court, while recognizing that other alternatives were available such as a bifurcated trial, held that in view of the limiting instructions the procedure followed was not constitutionally infirm. "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. See, e.g., Tumey v. Ohio, 273 U.S. 510; Betts v. Brady, 316 U.S. 455; cf. Gideon v. Wainwright, 372 U.S. 335; see Estes v. Texas, 381 U.S. 532; Sheppard v. Maxwell, 384 U.S. 333; cf. Griffin v. Illinois, 351 U.S. 12. But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal proce-

given evidence tending to prove his own good character or reputation; or,

"Two. He shall have testified at such trial against a co-defendant, charged with the same offense."

dure. And none of the specific provisions of the Constitution ordains this Court with such authority. In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases. As Mr. Justice CARDOZO had occasion to remark, a state rule of law does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar. Snyder v. Massachusetts, 291 U.S. 97, 105. See also Buchalter v. New York, 319 U.S. 427." 385 U.S. at 563-564. In *McGautha v. California,* 402 U.S. 183, 213 (1971) the Court observed: "The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. McMann v. Richardson, 397 U.S. 759, 769 (1970). Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved." The Court then proceeded to cite *Spencer* as approving of the evidentiary rule permitting a defendant who takes the stand to be impeached by the introduction of prior convictions without offending due process. "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. See, e.g., Brown v. Walker, 161 U.S. 591, 597-598 (1896); Fitzpatrick v. United States, 178 U.S. 304, 314-316 (1900); Brown v. United States, 356 U.S.

148 (1958). It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. See Spencer v. Texas, 385 U.S. 554, 561 (1967) ; cf. Michelson v. United States, 335 U.S. 469 (1948) ; but cf. Luck v. United States, 121 U.S. App. D.C. 151., 348 F. 2d 763 (1965) ; United States v. Palumbo, 401 F. 2d 270 (C.A. 2, 1968). Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." 402 U.S. at 215.

While we reject appellant's Constitutional claim, we recognize that the rule of evidence at issue here has been the object of much controversy in recent years,[7] and we feel it is appropriate to discuss its propriety under our supervisory powers.

In *Commonwealth v. Butler,* supra, at 47, Mr. Justice EAGEN, speaking for this Court, set forth the basis of this rule as follows: "This rule of evidence is founded on common sense and logic. If a defendant offers himself as a person worthy of belief, the jury has the right to know what kind of man he is—to aid in assessing his credibility. His previous record is admissible for this purpose just the same as testimony of prior

---

[7] The vortex of the storm of disagreement seems to focus upon the balance between the probative value of this type of evidence as it bears on the credibility of the defendant as a witness as opposed to the prejudicial effect that such evidence has upon the jury. See, Note, Other Crimes Evidence At Trial: Of Balancing And Other Matters, 70 Yale L.J. 763 (1961) ; Note, Use of Prior Crimes To Affect Credibility And Penalty In Pennsylvania, 113 U. of Pa. L. Rev. 382 (1965). Krauser, The Use of Prior Convictions as Credible Evidence: A Proposal For Pennsylvania, 46 Temp. L.Q. 291 (1973).

reputation for veracity is evidence for the jury's consideration." While admittedly the state has a legitimate interest to serve in showing that a defendant-witness is not worthy of belief, we cannot be unmindful of the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged. We attempt to avoid this prejudice first by allowing the defendant the election not to testify without adverse comment, *Griffin v. California*, 380 U.S. 609 (1965); *Commonwealth v. Davis*, 452 Pa. 171, 305 A. 2d 715 (1973), and, in the event that he chooses to testify and such evidence is introduced, by making a cautionary instruction available to the defendant. I Wharton Criminal Evidence §264 (13th Ed. 1972). However, we recognize that even with such safeguards, the possibility of unfairness in a given case may still be present and it is to that situation that we now address ourselves.

Since the avowed purpose of using prior convictions in rebuttal is to cast doubt upon the defendant's veracity generally as a witness, it is important to limit the convictions so used to crimes involving dishonesty or false statement. "Both Model Code of Evidence Rule 106(1)(b) and Uniform Rule of Evidence 21 make inadmissible evidence of the conviction of a crime 'not involving dishonesty or false statement.' *Accord*, McCormick, Evidence §43 at 91. The Comment to the Uniform Rule states the Rule's aim as preventing the 'smearing rather than discrediting' of the witness." *McIntosh v. Pittsburgh Railways Company*, 432 Pa. 123, 125, 247 A. 2d 467 (1968). Cf. Fed. R. Ev. 609. Convictions for crimes not in this category have no probative value in this regard.

However, there are other factors in addition to the nature of the crime involved which may bear upon the probative value of a prior conviction. In *Luck v. United States*, 348 F. 2d 763 (D.C. Cir. 1965), the United

States Court of Appeals for the District of Columbia Circuit spelled out some of these factors and permitted trial courts to exercise discretion in determining whether or not to admit prior convictions to impeach credibility. See also, *Weaver v. United States*, 408 F. 2d 1269 (D.C. Cir. 1969) and cases cited in the Appendix thereto.

Rather than make the admissibility of such evidence turn solely on the nature of the specific conviction, we agree with the approach advocated in *Luck*. Some of the considerations mentioned in *Luck* were: the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. 348 F. 2d at 769. This last factor is of critical importance. Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e.g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated.

Rather than address the specific facts of the case at bar, appellant argues for a blanket repudiation of this type of rebuttal evidence. We are therefore without the critical information necessary to determine whether any convictions appellant may have had would have been admissible, should the appellant have elected to take the stand. We cannot say on this record that appellant has demonstrated any abuse of discretion by the trial judge.

Appellant raises three challenges to the admission into evidence of a statement he gave to FBI Agent Revell, at a time when Agent Revell was investigating possible violations of federal law in connection with

this incident. First, he objects that since the statement was elicited pursuant to a federal investigation, the dismissal of federal charges renders the statement a nullity. We do not agree. The dismissal of a federal prosecution can be based on any number of factors. In this particular case, the federal court dismissed charges for lack of jurisdiction; the dismissal therefore does not affect the admissibility of any evidence obtained during the course of that investigation. Appellant has suggested no legal authority or persuasive logic to support his position that evidence obtained during the course of an investigation is necessarily tainted because, for some unrelated factor, the investigation is terminated.

Appellant makes a related claim that a state court may not receive evidence obtained by a federal officer during the course of a federal investigation. No authority is offered for this novel proposition nor can we perceive a reason that justifies such a rule. If the evidence is not offensive to any rule of evidence of this jurisdiction nor constitutionally infirm, the fact that it was obtained by a federal officer during a federal investigation is clearly immaterial.

Appellant also contends that the statement to FBI Agent Revell was not considered at the Suppression Hearing before Judge MEADE. The record refutes this contention. At one point during that hearing, Agent Revell testified at length concerning appellant's statement and appellant's attorney made it clear that he sought suppression of any and all statements. From the extensive questioning of Agent Revell, it is clear that admissibility of the statement was adequately explored. We are convinced that Judge MEADE had that issue properly before him and ruled against the appellant.[8]

---

[8] Appellant makes no claim here that the statement to Agent Revell was taken in violation of his constitutional rights.

Finally, appellant contends that the jury was not selected in compliance with the United States Supreme Court mandate in *Witherspoon v. Illinois,* 391 U.S. 510 (1968). As we noted in *Commonwealth v. Lopinson,* 449 Pa. 33, 296 A. 2d 524 (1972), "Inasmuch as the United States Supreme Court, in Furman v. Georgia, 408 U.S. 238 (1972), has ruled that the imposition of the death penalty under statutes such as the one in which the death penalty was imposed upon appellant is violative of the Eighth and Fourteenth Amendments, it is unnecessary for us to consider appellant's claim of non-compliance with the Witherspoon standard." (Footnote omitted.) See also, *Commonwealth v. Raymond,* 451 Pa. 500, 304 A. 2d 146 (1973).

The order of the lower court denying appellant's Motion in Arrest of Judgment and Motion for a New Trial is affirmed. The sentence of death is vacated and the appellant is sentenced to life imprisonment. *Furman v. Georgia,* 408 U.S. 238 (1972); *Commonwealth v. Raymond,* supra; *Commonwealth v. Lopinson,* supra.

Judgment of sentence as modified is affirmed.

Mr. Justice EAGEN and Mr. Justice MANDERINO concur in the result.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.