468 A.2d 479

**COMMONWEALTH of Pennsylvania**

v.

**Philip S. TOOMEY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1983.

Filed Oct. 21, 1983.

Reargument Denied Dec. 30, 1983.

Petition for Allowance of Appeal Denied June 13, 1984.

Richard Keith Renn, Assistant Public Defender, York, for appellant.

Sheryl Ann Dorney, First Assistant District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

WICKERSHAM, Judge:

A York County jury returned verdicts of guilty on charges of burglary and theft against Philip S. Toomey in a trial before the Honorable Emanuel A. Cassimatis. The principle evidence against Toomey was presented by Oscar Buckingham who had been employed as a truck driver for one Richard Kinard for approximately six years. On July 18, 1980, he arrived at his place of work at about ten minutes before 6:00 a.m. He testified:

A. I arrived and got out of the car right in front of the office door and I laid my briefcase on the hood of the car to get my keys out to open the office door. I noticed there was somebody in the office. I opened the door up and, at that time, the defendant came out of the inner office with a T-shirt in his hand. He hit the door to the garage with his right shoulder.

. . . .

A. I seen the office was, there was papers on the floor and the filing cabinet drawers were out of the filing cabinet.

. . . .

Q. Now, when did you first recognize this individual?
A. When he came through the office door, the inner office door into the outer office.

Record at 3–5.

Buckingham further testified that he had known Philip Toomey when Toomey had been employed for about five months as a maintenance garage worker for Kinard Trucking. Record at 11. He definitely identified the person that he observed in the office that morning as Mr. Toomey. Record at 12. He described the office area as having boxes, papers, and filing drawers on the floor. He called the police

and his employer. He testified that calculators and other office equipment were missing from the various desks and later were found in a box on the floor just inside the office door. Record at 12–14.

Ray Wells testified that he is terminal manager for Richard L. Kinard and that, on July 18, 1980, he came to the office building in response to a call from Mr. Buckingham. He testified that when he came into the office area, he found "the outside door was jimmied, broke open." Record at 20. He further testified that he found three calculators, a radio, and a bag full of change that came out of the Coke machine packed in a box. There was $101 missing from the cash box. Record at 21. Wells testified that when he left the terminal the preceding evening at 5:00 p.m., everything was in order and no one had permission to be in the office area at the time indicated. Record at 21–22.

Following Toomey's jury conviction, post-verdict motions were filed, briefed, and on August 3, 1981, denied. On September 18, 1981, Judge Cassimatis sentenced Philip S. Toomey to undergo imprisonment for a period of not less than six nor more than twelve months, to pay the costs of prosecution, and to make restitution. This direct appeal followed with trial counsel appearing as appellate counsel as well. One issue has been presented for our consideration, as follows:

Did the Lower Court err when it ruled that the Commonwealth could introduce Defendant's prior record of burglaries to impeach Defendant?

Brief for Appellant at 4.

During the trial of the instant case, the Commonwealth sought to prove six burglary convictions in 1977 against the defendant. An extended colloquy took place among counsel for the Commonwealth, counsel for the defendant, and the court. Record at 36–45. Judge Cassimatis considered the test set forth in *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) where our supreme court held:

Although the statutory law of this jurisdiction expressly prohibits a defendant in a criminal case from being cross-examined as to other crimes he may have committed with two exceptions,[6] our decisional law has made it clear that the Commonwealth may introduce in rebuttal evidence of prior convictions to attack the credibility of a defendant who has elected to testify in his own behalf.

---

[6] Act of March 15, 1911, P.L. 20, § 1, 19 P.S. § 711 provides: Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

Two. He shall have testified at such trial against a co-defendant, charged with the same offense.

. . . .

While admittedly the state has a legitimate interest to serve in showing that a defendant-witness is not worthy of belief, we cannot be unmindful of the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged. We attempt to avoid this prejudice first by allowing the defendant the election not to testify without adverse comment, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Davis*, [452] Pa. [171], 305 A.2d 715 (1973) (decided May 23, 1973), and, in the event that he chooses to testify and such evidence is introduced, by making a cautionary instruction available to the defendant. I Wharton Criminal Evidence § 264 (13th Ed.1972). However, we recognize that even with such safeguards, the possibility of unfairness in a given case may still be present and it is to that situation that we now address ourselves.

Since the avowed purpose of using prior convictions in rebuttal is to cast doubt upon the defendant's veracity generally as a witness, it is important to limit the convic-

tions so used to crimes involving dishonesty or false statement.

. . . .

However, there are other factors in addition to the nature of the crime involved which may bear upon the probative value of a prior conviction. In *Luck v. United States,* 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), the United States Court of Appeals for the District of Columbia Circuit spelled out some of these factors and permitted trial courts to exercise discretion in determining whether or not to admit prior convictions to impeach credibility. See also, *Weaver v. United States,* 133 U.S. App.D.C. 66, 408 F.2d 1269 (1969) and cases cited in the Appendix thereto.

Rather than make the admissibility of such evidence turn solely on the nature of the specific conviction, we agree with the approach advocated in *Luck.* Some of the considerations mentioned in *Luck* were: the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. 348 F.2d at 769. This last factor is of critical importance. Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or, where the prior conviction is not critically important to the Commonwealth's case—e.g., where other adequate means of attacking the defendant's credibility are available—exclusion of prior convictions is strongly indicated.

*Id.,* 452 Pa. at 562–567, 307 A.2d at 260, 262–63.

At the trial, Philip S. Toomey had taken the witness stand and testified that he was at a beer party given for his sister-in-law for her birthday. He said he arrived at the party around 10:00 o'clock in the evening on July 17, 1980 and that he was "drinking pretty heavy". Record at 49. He said that he left the party with his brother, sister-in-law,

and Terry Schrum. He went to his brother's house, a block away. He did not wake up until the following morning "around dinner time." Record at 51. The defense called several other witnesses, including Terry Schrum, to support Toomey's alibi testimony.

During his direct testimony in defense, Philip Toomey admitted that he had "recently been charged with" six or eight burglaries in 1977 and that he plead guilty to those crimes. Record at 53–54. As of the time that Philip Toomey took the witness stand, Judge Cassimatis had already indicated that he would permit the Commonwealth to present the prior convictions in rebuttal.

Judge Cassimatis analyzed his ruling in the following language:

THE COURT: And, they're all in 1977 when the defendant was eighteen years of age?

MR. RENN: That's correct. The defendant is now twenty-two.

THE COURT: We hold that these prior offenses do reflect upon the varacity [sic] of the defendant witness. The second consideration is the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged rather than providing a legitimate reason for discrediting him as an untruthful person.

Now, in this case, the charge is burglary, and, so, as I consider this factor, there is a tendency that this would attack the character of the defendant and suggest a propensity to commit the crime rather than to provide a legitimate reason for discrediting him as an untruthful person. If this were the only consideration we were to consider, we would not admit the prior convictions, but, as we understand this rule or law, it's just one of the several considerations and consideration No. 1 would lead us not to permit it.

However, for reasons before and hereafter stated, we believe that it should be admissible.

The third factor is the age and circumstances of the defendant. The defendant is now twenty-two years of age and these offenses occurred when he was eighteen. We do not view these ages as being significant one way or the other in terms of indicating we should or should not admit these prior convictions.

Fourth, which is one of the two mose [sic] significant factors we are considering, is the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the offense can be presented. It is already apparent from the testimony that has been introduced that the Commonwealth's only identification of the defendant as the person who committed the burglary with which he is charged is a former co-employee of the defendant who served as a co-employee for approximately five months and estimated he saw the defendant during that five month period about twenty-five times. The Commonwealth witness said that he saw the defendant at the scene of the alleged burglary and as he was leaving on two occasions, once approximately ten feet away and the second time approximately four feet away. In each instance, there was ample light, and he has no doubt that it was the defendant whom he saw.

On the other hand, the defendant has already presented witnesses and has some more ... it that right?

MR. RENN: Yes.

THE COURT: Who would indicate that the defendant was not at the scene of the burglary but was someplace else, thus establishing an alibi defense. The thrust of the defendant's alibi defense is that he was at a beer party for his sister-in-law's birthday until about 3:00 o'clock in the morning; that he then went home with his sister-in-law and her husband, his brother, and slept on a couch in their living room until late the next morning, after 10:30

or so. So far, the testimony has placed the defendant at the party and on the couch at 4:00 a.m. and again at 10:30 a.m. The Commonwealth's witness fixed the time of this burglary at 6:00 a.m. We understand from defense counsel that there is another witness for the defense who will testify that she saw the defendant on the couch in his brother's home at about somewhere in the neighborhood of 7:00 a.m.

The defendant will take the stand and testify that he slept on the couch this entire time, from the time he laid down at about 4:00 a.m. until late in the morning, after 10:30 a.m. We also note that the testimony indicates that the defendant was intoxicated as he left the party and fell quickly into sleep as he laid down on the couch at his brother's home after the party while his sister-in-law and brother were watching T.V.

In view of this critical issue of identification as to whether the defendant was the person the Commonwealth's witness said he saw, and the number of alibi witnesses of the defendant, when we consider this factor, it, in our view, supports permitting the Commonwealth to present the prior convictions.

The last consideration we are to consider is the existence of alternative means of attacking the defendant's credibility. Are there any prior admissions or statements or confessions by the defendant?

MR. RENN: No.

MR. BORTNER: Absolutely none.

THE COURT: There are no prior statements or admissions by the defendant. Are there any other ways you have of attacking his credibility other than this. Anyone see him on the street, for example, at this time?

MR. BORTNER: No. The only evidence we have is what we presented. I'm not holding anything back.

THE COURT: Nor are there any other witnesses known to the Commonwealth who could place him on the street

or in the vicinity of the burglared premises at the time of the burglary.

MR. BORTNER: In other words, we have no witnesses who can dispute his alibi witnesses or contradict them of his alibi.

THE COURT: In applying the balance test under Bigham [sic], as further explained in the Roots case, we hold that the Commonwealth may introduce these prior convictions in the event the defendant takes the stand.

MR. RENN: Now, this is for the purpose only of attacking the credibility of the defendant. Is that correct?

THE COURT: Yes.

MR. RENN: Then we would request that an appropriate instruction be given that that be limited to that.

THE COURT: Sure.

MR. RENN: And, we ask for an exception to the Court's ruling.

THE COURT: Certainly.

Record at 40–44.

In *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978), the Pennsylvania Supreme Court, speaking through Mr. Justice Nix, pointed out that the burden is upon the prosecution to show that the need for this type of evidence overcomes its inherent potential for prejudice. Justice Nix said that an accused is entitled to a trial before an objective, dispassionate, and impartial trier of fact. The court said:

Where evidence is of a highly inflammatory potential, courts have traditionally recognized their responsibility to monitor its use: *See Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978); *Commonwealth v. Ross*, 452 Pa. 500, 506, 307 A.2d 898, 901 (1973). When we consider the difficulty in limiting this type of evidence to the purpose for which it was introduced, the natural tendency for it to be interpreted as indicative of the defendant's propensity to commit crime, and the ineffectiveness of cautionary instructions, it is apparent that the prosecution should be required to show that the state's interest in

its probative value outweighs the prejudice that will inure to the defendant.

In the instant case it is clear that the trial court employed an erroneous standard in exercising its discretion in ruling that the impeachment testimony would be permitted if the appellant elected to testify. Appellant avers that this ruling caused the defense at trial to decide that appellant should not testify. Moreover, the need to hear appellant's version was compelling since the prosecution relied solely on his unexplained presence in the burglarized premises. In *Bighum, supra,* we stressed that, of 'critical importance,' is 'the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.' *Id.,* 452 Pa. at 567, 307 A.2d at 263. The argument against the admission of the prior conviction is further bolstered by the availability of prior inconsistent statements of appellant, which should have provided an adequate alternative to the prosecution. It is difficult to understand how appellant's oral admissions, which presumably would have contradicted his trial testimony, could be any less effective, for impeachment purposes, than a five-year-old unrelated robbery conviction. It seems indisputable that prior inconsistent statements relating to the alleged criminal behavior for which the accused is presently on trial must necessarily provide more insight as to his truthfulness in the matter than the fact that at some earlier point in time he was convicted of committing an unrelated criminal act. Finally, it is difficult to support a finding that this rebuttal evidence was essential to the success of the prosecution in a case where the defendant was apprehended virtually 'redhanded.'

In view of all of these considerations it is apparent that viewed in light of the proper standard, it was an abuse of discretion to rule that this prior conviction was available to the prosecution for impeachment of the appellant in the event he had taken the stand as a witness in his own behalf. We further conclude in light of the critical nature

of the ruling that the error can only be remedied by the award of a new trial.

Judgment of sentence reversed and a new trial is awarded.

*Id.;* 482 Pa. at 41–42, 393 A.2d at 368.

In *Commonwealth v. Williams,* 273 Pa.Super. 389, 417 A.2d 704 (1980), a panel of our court (Cercone, President Judge, Wieand and Hoffman, JJ.), in a decision by Judge Wieand, reached a similar result and held that the trial court had abused its discretion when it determined during trial that four prior robbery convictions would be admitted to attack appellant's credibility if he testified. The panel concluded that this ruling was an abuse of discretion, and reversed and remanded for a new trial. In *Williams,* Judge Wieand conceded that "the question is a close one." *Id.,* 273 Pa.Superior Ct. at 392, 417 A.2d at 705.

We feel that, under the circumstances that confronted Judge Cassimatis, his exercise of discretion was proper and his decision legally correct. Clearly, the convictions were for a crime involving an element of dishonesty and which does tend to discredit a witness as being untruthful. Also, the appellant's credibility was a significant issue for the jury to decide. Furthermore, the burglary convictions were recent. In addition, the only Commonwealth witness to link the defendant to the crime was witness Buckingham. It was a one-on-one identification with no supporting witnesses. There were no statements given by the defendant available for use by the Commonwealth. In addition, the defendant testified as to his alibi and called other witnesses to support his testimony.

Under all the circumstances, we believe Judge Cassimatis correctly applied the balancing test of *Commonwealth v. Bighum, supra,* and properly exercised his discretion in admitting prior convictions to impeach credibility.

Judgment of sentence affirmed.