512 A.2d 1253

COMMONWEALTH of Pennsylvania

v.

Bernard Cary DUFFY, a/k/a Bernard C. Duffy, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 15, 1986.

Filed July 16, 1986.

146

Paulette J. Balogh, Assistant Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.

KELLY, Judge:

This is a direct appeal from judgment of sentence entered in the Court of Common Pleas of Allegheny County on October 10, 1984. The appellant was charged by information with Criminal Homicide and Firearms Not to be Carried Without a License as a result of a fatal altercation between the appellant and Rudy Ryder in the early morning hours of August 2, 1983 outside the Wagner Club, an after-hours bar.

On April 6, 1984, a jury found the appellant guilty of Voluntary Manslaughter and Firearms Not To Be Carried Without a License. Post-trial motions were filed and denied. On October 10, 1984, the appellant was sentenced to a term of from five (5) to ten (10) years on the Voluntary Manslaughter charge, and a concurrent term of from two and one half (2½) to five (5) years on the firearms charge.

The appellant raises five issues on appeal. He argues that the trial court erred: in failing to suppress his "involuntary" statements to the police; in permitting use of a prior conviction to impeach the appellant; in refusing to give a requested instruction on Homicide by Accidental Misadventure; in finding the evidence sufficient to sustain a Voluntary Manslaughter conviction; and in finding the evidence sufficient to sustain a conviction for Firearms Not to be Carried Without a License. We find no merit in the appellant's allegations of error and accordingly affirm the judgment of sentence.

Appellant's first contention is that the trial court erred in failing to suppress his allegedly involuntary statements to the police. The appellant contends "that his lack of sleep,

alcohol consumption, and shock over the shooting incident negated his ability to voluntarily and intelligently waive his rights as guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before making an inculpatory statement." (Appellant's Brief at 9).

The appropriate standard for appellate review of the finding of a suppression court is for the appellate court to consider the evidence of the Commonwealth and so much of the defense evidence as fairly read in context of the record as a whole, remains uncontradicted. *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147, 151 fn. 5 (1980), *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985), *cert. denied,* — U.S. —, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

■ "[T]he ultimate test for voluntariness is whether the confession is the product of an essentially free and unconstrained choice of its maker." *Commonwealth v. Smith*, 470 Pa. 220, 225, 368 A.2d 272, 275 (1977), *quoting Commonwealth v. Alston*, 456 Pa. 128, 133, 317 A.2d 241, 243 (1974). All circumstances "which may serve to drain one's power of resistance to suggestion and undermine his self-determination" must be considered. *Commonwealth v. Fleck*, 324 Pa.Super. 227, 471 A.2d 547 (1984).

■ Succinctly, the police officers each testified that the appellant's demeanor was calm and that he showed no signs of intoxication. They testified that the appellant was given full *Miranda* warnings and agreed to waive his rights orally and in writing. The "Pre-interrogation Warning Form" which the appellant signed was produced and entered into evidence. Thus, there was sufficient credible evidence upon which to base the findings of the learned trial judge. *See also Commonwealth v. Thomas*, 266 Pa.Super. 529, 405 A.2d 945 (1976). The appellant's first contention on appeal is, therefore, without merit.

The appellant next contends that the trial court erred in permitting the use of the appellant's prior *crimen falsi* conviction. The appellant alleges that:

At the conclusion of the defense case and prior to Mr. Duffy taking the witness stand, the Commonwealth surprised the defense by indicating that he intended to use a prior *crimen falsi* conviction of Mr. Duffy to impeach his credibility. (T.T. 235). Mr. Duffy's record was unknown to the defense counsel at the time of trial and any criminal record was not forwarded to the defense as required by the Pennsylvania Rules of Criminal Procedure. (Pa.R.C.P. 305(B)(1)(c)).The alleged offense took place in 1977 when Mr. Duffy was 18 years of age. (T.T. 235). The defense was placed at a tactical disadvantage in that it had already presented several witnesses based on the conclusion that Mr. Duffy could not be impeached by a prior record because he had no prior record."

(Appellant's Brief at 12).

 It is true that when the admissibility of prior convictions is an issue, the trial court should conduct an *in camera, Bighum* [1] hearing prior to the commencement of trial, in order that the defendant may weigh his or her decision to testify at trial. It is error for the court to deny the defendant such a hearing. *See Commonwealth v. Hill,* 302 Pa.Super. 377, 448 A.2d 1090 (1982). However, in *Commonwealth v. Tangle,* 349 Pa.Super. 574, 504 A.2d 193 (1986), this Court held that the Commonwealth did not have the exclusive responsibility to request a pretrial, *in camera, Bighum* hearing to determine the admissibility of prior convictions to impeach the defendant; and, thus, did not waive the right to use impeaching material by failing to request a hearing.

In *Commonwealth v. Jennings,* 335 Pa.Super. 404, 484 A.2d 409 (1984), this Court considered the failure of the trial court to conduct a pretrial *Bighum* hearing, *among other factors,* in determining that the trial court abused its discretion in permitting the use of the prior conviction evidence for impeachment purposes. However, in *Commonwealth v. Richardson,* 347 Pa.Super. 564, 500 A.2d 1200 (1985), *Commonwealth v. Kearse,* 326 Pa.Super. 1, 473 A.2d 577 (1984),

1. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1983).

and *Commonwealth v. Toomey,* 321 Pa.Super. 281, 468 A.2d 479 (1983), this Court upheld the trial court's decision to allow prior conviction evidence to be admitted for impeachment purposes in spite of the fact that no pretrial *Bighum* hearing was held.[2]

■ In *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), our Supreme Court stated:

> We here reiterate, and to some extent, refine the factors that should be considered in the balancing equation. It is to be stressed that the list is not to be considered exhaustive or exclusive, but rather illustrative of the type of considerations that should influence the decision.

482 Pa. at 39, 393 A.2d at 367. It is clear that the trial court is required to balance each of the factors favoring and disfavoring admission of the prior record evidence in making its determination. Absence of a pretrial *Bighum* hearing and consequent protestations of prejudice are certainly factors to be considered in this analysis.[3]

■ In reviewing the trial court's decision to admit prior conviction evidence we may only reverse where the trial court has abused its discretion. *Roots, supra; Kearse, supra.* In making this determination in the instant case we will first consider whether the appellant was prejudiced by the absence of a pretrial *Bighum* hearing. Next, we will consider the factors set forth in *Roots.*

Initially, we note that we do not accept the appellant's characterization of the facts. The appellant seeks to create the illusion that the prosecution sprang the appellant's prior conviction on the defense at the end of the trial just prior to the appellant's testimony. Such is not the case.

---

**2.** A *Bighum* hearing was in fact conducted *during* the trial in each of these cases. In *Kearse,* the hearing was conducted after the appellant had begun his testimony.

**3.** We speak, of course, only of those cases where neither side has requested a pre-trial hearing and the issue arises at trial. Where a pre-trial hearing is requested, a hearing must be conducted. See *Hill, supra.*

The only defense witnesses who testified prior to the required *Bighum* hearing did so upon the request of defense counsel, for the convenience of the defense witnesses, and prior to the close of the Commonwealth's case. The following discussion appears in the record between the Judge; the District Attorney, Mr. Conrad; and Defense Counsel, Mr. Radoycis:

THE COURT: We're going to deviate a slight bit, members of the jury, so that we can accommodate the lawyers on both sides here; and the jurors as well, not wasting time. Although the Commonwealth will not have concluded its case today, there may be some wrapup tomorrow. Is that possible?

MR. CONRAD: Yes, Your Honor.

THE COURT: The pathologist who will testify is unavailable at the present time. He is an important individual who must, I mean he is on call. But he's unavailable to be here today. Counsel for the defense has witness that he has in court; is that correct?

MR. RADOYCIS: That is correct, Judge.[4]

THE COURT: That he wishes to call out of turn; and the Commonwealth has agreed to it; and we see nothing wrong with that; so we're going to accommodate him. That will be that much less for you to have to hear tomorrow.

MR. RADOYCIS: Your Honor, just so we're clear, I will make the necessary and appropriate motions at the completion of the Prosecution's case when Doctor Williams completes his testimony tomorrow. It's for the convenience of some of the people who have been so gracious to come to court to testify on behalf of the defense that we are asking the District Attorney for this unusual procedure.

(Trial Transcript at 185–186). The next day, after the Commonwealth closed its case and before the appellant re-opened its case, a *Bighum* hearing was held.

---

**4.** In fact two witnesses were called for the defense, John Duffy and Dennis O'Hare.

We also reject the appellant's allegation of unfair surprise. Appellant's counsel stated:

MR. RADOYCIS: The District Attorney has advised me that he intends to use a 1977 conviction from my client for theft and receiving stolen property, some hubcaps when he was 18 years old. My client indicated to me prior to this that he didn't recall having any convictions as such on his record. As a result, I didn't want to consider the possibility of any theft admission being used against him at trial. Secondly, I did not receive any rap sheet indicating that he had been convicted of a theft under discovery procedures.

(T.T. at 235).

Yet the appellant had *two* prior convictions. One was for a *crimen falsi* offense, one was not. In rejecting defense counsel's claim of unfair surprise the learned trial judge aptly stated, "the defendant himself should have known and should have told you." (T.T. at 239). We agree.

Even if we were to accept, arguendo, the alleged lapse of memory concerning the existence of two prior convictions as genuine and excusable, the alleged surprise would still be attributable to the appellant. All discovery in this case was conducted under the provisions of Pa.R.Crim.P. 305(A) which provides in pertinent part:

*A. Informal*

Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a *good faith effort* to resolve all questions of discovery, and to provide information requested or required under these rules as to which there is no dispute.

(Emphasis added).

Upon review of the record, we find that the Commonwealth made a *good faith effort* to provide all information requested by the appellant. Two discovery packets were prepared in this case. (T.T. at 239). The record does not disclose what the packets did or did not contain. The appellant claims a "Rap Sheet" was not included; the District Attorney explained to the Court that he would have

to take defense counsel at his word. (T.T. at 239). Nonetheless, the appellant apparently concedes the fact that the Commonwealth acted in good faith as he has stated:

While it is not contended that the omission to forward Mr. Duffy's record to the defense was done deliberately,....

(Appellant's Brief at 13).

Importantly, the appellant made no motion to compel discovery of the prior record pursuant to Pa.R.Crim.P. 305(B)(1)(c). Had such a request been made or had the appellant merely informed the Commonwealth of the alleged omission, the discovery could have been provided, and any surprise avoided. Additionally, any omission or refusal to provide under Pa.R.Crim.P. 305(B)(1)(c) discovery would appear in the record itself, rather than through the unverifiable allegations of counsel. All that is required under Pa.R.Crim.P. 305(A) is that the parties act in good faith. The record indicates that the Commonwealth did; thus, we find no violation of the criminal discovery rules.

Furthermore, we are unpersuaded that the appellant's alleged surprise presented any unfair prejudice or tactical disadvantage. Allegations of prejudice, like allegations of ineffectiveness, can not exist in a vacuum. *See Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). Error in the abstract does not require a new trial. *Commonwealth v. Pittman*, 320 Pa.Super. 166, 466 A.2d 1370 (1983); *Commonwealth v. Butts*, 495 Pa. 528, 434 A.2d 1216 (1981).

First, any surprise is attributable to the appellant. Secondly, the fact that two defense witnesses were called out of order and prior to the *Bighum* hearing is, likewise, attributable to the appellant. Finally, the appellant fails to specify what prejudice was caused by the "surprise" evidence.

At trial, counsel stated, "Had I been notified of it, I certainly would have used greater discretion or judgment in determining how to proceed in this case." (T.T. at 235). This is precisely the type of abstract claim which *Pettus*, *Pittman*, and *Butts* expressly reject. The learned trial

judge correctly rejected this claim of prejudice. (T.T. at 235–236).

Later in the hearing, after receiving appellant's "Rap Sheet," counsel pointed out that the trial judge had presided in one of the prior cases in which appellant was convicted. Counsel then argued that, "had this been resolved in discovery, I would have asked this Court to recuse itself because of prior contacts with the defendant which I think is the proper procedure at that point." (T.T. at 238).

The learned trial judge rejected this allegation of prejudice and stated:

THE COURT: In a county this size when we have the case load that we have [we] just [have] to accommodate—

MR. RADOYCIS: It's not a matter of accommodation, Judge.

THE COURT: I had no recollection of this. I didn't know about it. I didn't know anything about it. I still have no recollection even though I have the papers here. I recognize my signature on that one and that is—that's the way it is.

(T.T. at 238).

■ "Evidence that the trial judge has presided over an earlier trial involving the same defendant is not, in itself, sufficient evidence of prejudice, nor does it switch to the Commonwealth the burden of proving the judge's incessant impartiality." *Commonwealth v. Edney,* 318 Pa.Super. 362, 464 A.2d 1386 (1983); *See also Commonwealth v. McQuaid,* 273 Pa.Super. 600, 417 A.2d 1210 (1980); *Commonwealth v. Conrad,* 241 Pa.Super. 324, 361 A.2d 421 (1976). The appellant made no other allegations of bias or prejudice. Thus, the recusal argument was without merit, as the only prejudice alleged was inadequate as a matter of law to warrant recusal.

■ Finally, the appellant alleges in his brief to this Court that "the defense was placed at a tactical disadvantage in that it had presented several witnesses based upon the conclusion that Mr. Duffy could not be impeached by a prior

record because he had no prior record." (Appellant's Brief at 12). We reject the appellant's cryptic allegation of "tactical disadvantage."

The Commonwealth had three eyewitnesses to the crime. Additionally, they presented testimony from four police officers, a criminologist, and a pathologist from the coroner's office. Succinctly, the Commonwealth had ample evidence to put the appellant at the scene of the crime, put the gun in his hand and establish a gunshot wound as the cause of death. Janice McCowen testified, "Rudy was on the ground, Duffy had picked up the gun; he shot him." (T.T. at 53). Mark Shields testified that Duffy picked up the gun, that the gun was about a foot from Ryders head, and that after the shot the gun was in Duffy's hand. (T.T. at 126–128). Barbara Russel testified, "Bernie [Duffy] picked the gun up and he pointed it to Rudy's temple; and then he said, "I will blow your fucking brains out." (T.T. at 91).

The appellant's theory of the case from the outset was that the gun discharged by accident as the appellant lunged for the gun to prevent Ryder from recovering control of it. This theory could be seen as plausibly consistent with all but Barbara Russel's testimony.[5] All the witnesses testified that the last critical events occurred in seconds, and admitted some confusion. Only Barbara Russel testified that she saw the appellant actually pick up the gun, point, threaten, and fire.

With or without the prior record impeachment evidence it was necessary for the appellant to call both witnesses who testified prior to the *Bighum* hearing. John Duffy, the appellant's brother, testified that Barbara Russel had admitted to him that she was not certain that the appellant had actually said, "I will blow your fucking brains out." (T.T. at 209). Dennis O'Hare testified that the fatal shot occurred five seconds after Ryder was knocked down and that everything was in a state of confusion. (T.T. at 194, 200). This evidence was necessary to rebut Barbara Rus-

5. We acknowledge the "plausibility" of the theory only in reference to the tactics of trial counsel and imply no endorsement of its merits.

sel's testimony whether or not the appellant chose to testify.

We fail to see, and the appellant has failed to indicate, how the trial tactics might have been altered had appellant's counsel known of the prior record evidence before the witnesses had testified. Thus, the appellant failed to identify any prejudice resulting from the absence of a pre-trial *Bighum* hearing for the court to consider in determining whether the probative value of the prior conviction evidence outweighed its prejudicial effects.

We note that the appellant has presented no argument as to the admissibility of the prior record evidence under the balancing test for admissibility announced in *Bighum, supra,* and refined in *Roots, supra.*[6] Nevertheless, we have reviewed the record and find that evidence of the prior *crimen falsi* conviction was properly admissible under *Bighum, Roots,* and their progeny.

The prior conviction was for a theft offense, thus necessarily it reflected upon the defendant's veracity. The current charge was for homicide, hence the offenses were fundamentally distinct and there was little risk of an improper inference of a propensity to commit the crime charged. Nor was the prior record extensive or otherwise inflammatory. The appellant committed the offense when he was eighteen years old, an adult in the eyes of the law. The prior offense was not stale, having been committed approximately six years prior to trial.

6. Our Supreme Court stated in *Roots* that in making its determination of the admissibility of prior record evidence the court should consider: 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to the evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility. 482 Pa. at 39–40, 393 A.2d at 367.

The Commonwealth's case was not overwhelming. Although the Commonwealth presented testimony from several witnesses, only Barbara Russel could establish the critical element of intent. Moreover, the defense was able to damage her credibility both on cross-examination and with its own witness. Consequently, credibility was a crucial issue at trial. Finally, the Commonwealth had no adequate alternative means of impeachment. Although the defendant initially denied any knowledge of the incident to the police, his story once he began talking was consistent with his theory at trial. Under these circumstances we find no abuse of the trial court's discretion.

Thus, we find no unfair surprise, no prejudice caused by the absence of a pretrial hearing, no grounds to exclude the evidence under the *Roots* test, and therefore, no merit in the appellant's second contention on appeal.

The appellant next contends that the trial court erred in failing to give a requested charge on Homicide by Accidental Misadventure. Prior to the charge of the jury, defense counsel submitted standard jury instruction 15.250(d) pertaining to Homicide by Accidental Misadventure. The court rejected the offered instruction and substituted its own language. (Transcript of the Jury Charge at 28). Defense counsel did not object at the conclusion of the charge, nor later, when the jury returned for clarification of the charge. (T.J.C. at 43–52).[7]

 Upon review we find that the evidence did not support the requested charge. Homicide by Accidental Misadventure requires that the act which causes death must

---

7. We note that this contention may have been waived by counsel's failure to renew his initial objection to the trial court's rejection of the offered instruction at the close of the charge or thereafter when additional instructions were requested by the jury. *See* Pa.R.Crim.P. 1119(b); *Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220 (1981); *Commonwealth v. Martinez,* 475 Pa. 331, 380 A.2d 747 (1977); *Commonwealth v. Fisher,* 342 Pa.Super. 533, 493 A.2d 719 (1985); *But See Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975); *Commonwealth v. Hastings,* 301 Pa.Super. 65, 446 A.2d 1337 (1982). However, we decline to resolve this issue on procedural grounds and instead dispose of the contention on its merits.

be: 1) lawful; 2) done with reasonable care and due regard for the lives of others; and 3) an accident without design or intent. *See Commonwealth v. Jackson,* 464 Pa. 292, 346 A.2d 746 (1975). Accepting the appellant's version of the facts as true, he is still not entitled to the requested charge. The act of lunging for a loaded gun is not one which is done with *reasonable care and due regard for the lives of others.* Hence, the appellant was not entitled to the charge. Furthermore, the jury charge, as a whole, fairly indicates that the prosecution had the burden to prove beyond a reasonable doubt that the shooting was not accidental. Consequently, we find the appellant's third contention on appeal to be without merit.

Next, the appellant contends that the evidence was not sufficient to sustain either the Voluntary Manslaughter conviction or the conviction for Firearm Not to be Carried Without a License. We cannot agree.

In reviewing the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth. *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984). The Commonwealth is entitled to the benefit of all favorable inferences to be drawn from the evidence. *Commonwealth v. Santiago,* 476 Pa. 340, 382 A.2d 1200 (1978).

"It is solely the province of the trier of fact to pass upon the credibility of witnesses, and to give it such weight as may be accorded to the evidence therein produced. The factfinder is free to reject a contention of accident or self-defense in favor of testimonial or circumstantial evidence to the contrary. *See Commonwealth v. Phillips,* 269 Pa.Super. 537, 410 A.2d 832 (1978); *Commonwealth v. Rambo,* 250 Pa.Super. 314, 378 A.2d 953 (1977).

We find that there was sufficient evidence upon which to base the verdicts. Appellant's argument is based upon the false premise that the trial court was bound to accept his version of the facts in accessing the sufficiency of the evidence. The trial court was not so bound.

The testimony was sufficient to establish that the appellant was seriously provoked by the decedent, Rudy Ryder. Rudy slammed the appellant against the wall of the bar and later fired three shots at the appellant. Thus, provocation was established.

The testimony was also sufficient to establish that immediately after Ryder was disarmed, the appellant came over, picked up the gun, threatened the decedent, and fired the fatal shot. The evidence was clearly sufficient to support the verdict of guilty as to Voluntary Manslaughter.

■■■ Finally, the appellant made the following admissions at trial: "I had the gun wrapped up in a towel;" "I just carried the gun away;" and "... I put the gun in my pants...." (T.T. at 300). The appellant also testified that he placed the gun in his brother-in-law's car. (T.T. at 288). It was stipulated that the appellant had no license to carry a weapon either concealed on his body or in an automobile. (T.T. at 229). The stipulation and the appellant's admissions, alone, were sufficient evidence to sustain the verdict of guilty to the charge of Firearms Not be Carried Without a License. Thus, the appellant's fourth and fifth contentions on appeal are found to be without merit.

For the foregoing reasons, Judgment of Sentence is Affirmed.