407 A.2d 424

**COMMONWEALTH of Pennsylvania**

v.

**Gregory Tyrone BRABHAM, Appellant.**

Superior Court of Pennsylvania.

Submitted March 12, 1979.

Decided July 12, 1979.

---

36

38

Marilyn C. Zilli, Assistant Public Defender, Harrisburg, for appellant.

Marion E. MacIntyre, Second Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

■ After a jury trial, appellant was convicted of receiving stolen property and sentenced to 1½ to 5 years imprisonment. On this direct appeal, appellant contends *inter alia*[1]

1. Appellant also contends that the lower court erred in refusing to instruct the jury that it could find him guilty of the lesser offense of unauthorized use of a motor vehicle. The lower court, citing *Commonwealth v. Peacock,* 246 Pa.Super. 212, 369 A.2d 886 (1977) in its opinion deemed the issue waived because appellant did not brief the

that the lower court erred in: (1) not sustaining his demurrer,[2] and (2) improperly allowing evidence of prior crimes to impeach him and one of his witnesses. We conclude that the lower court improperly admitted evidence of prior crimes to impeach and, accordingly, reverse and remand for new trial.

Viewed in the light most favorable to the Commonwealth, the following evidence was adduced at appellant's jury trial on January 17–20, 1977:

On January 27, 1976, at approximately 7:00 a. m., three black men stole three automobiles—two Mercedes-Benz and one 1976 Cadillac El Dorado, each with owner manuals inside—off the lot at Bob's Auto Exchange in Harrisburg. The business office, from which dealer tags and keys were missing, had been broken into. Approximately 12 hours later, in Philadelphia, two police officers in an unmarked patrol car saw the El Dorado run a traffic light. Two black men were in the car. At the officers' signal, the El Dorado pulled over and stopped. However, as the officers approached the car on foot, it sped away. The officers returned to their vehicle and chased the El Dorado. During the chase, the man on the passenger side of the car jumped out, and the El Dorado continued at high speed. Finally, unable to make a left hand turn into a small street, the driver of the El Dorado stopped the car, jumped out, and fled on foot. One of the officers caught the driver and identified him at trial as appellant. In his search of the car, the officer discovered four dealer tags under the front seat and several titles and two owner manuals for Mercedes-Benz in the glove compartment; the owner of Bob's Auto testified that all such items came from his business.

issue before the post-verdict motion court (appellant's post-verdict motions listed some 40 separate grounds for relief, of which 14 were briefed to the court below). Because we are remanding for new trial on other grounds, we need not decide the propriety of the lower court's ruling on this issue.

**2.** Because appellant elected to put on a case in defense after an adverse ruling on his demurrer, we will treat appellant's contention as "whether the trial court erred in refusing defendant's motion in arrest of judgment." *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 347–348 n. *, 353 A.2d 387, 388 n. * (1976).

Appellant testified that he was with his fiancee and friends, including one Vaughn Keith Lee, throughout the evening of July 26, 1976 until approximately 8:30 a. m. on July 27. He, his fiancee, and Lee then drove to the bus station, where he obtained a bus ticket to Philadelphia. After his fiancee and Lee left the station, another friend, Jimmy White, drove up in the El Dorado and offered him a ride to Philadelphia. Appellant cashed in his bus ticket and went with White. Appellant testified that he did not believe that White owned the El Dorado but that White had told him he was working for a car painting company and had to deliver the car to some one in Philadelphia as part of his job. Nonetheless, appellant and White drove around in the car for the next 9 to 10 hours, stopping at a lounge and the home of another of appellant's friends. Appellant admits that he was driving the car at the time the police signalled him to pull over. He testified that at that moment White told him for the first time that the car was "hot". He explained that his ensuing flight in the car and on foot resulted from panic. Several of appellant's friends, including Lee, corroborated parts of appellant's testimony; White did not testify.

On the basis of the above evidence, the jury found appellant not guilty of burglary and theft of movable property and guilty of receiving stolen property.

■ Appellant first contends that the evidence is insufficient to support his conviction for receiving stolen property. 18 Pa.C.S.A. § 3925.[3] Specifically, he claims that the Commonwealth did not prove beyond a reasonable doubt that he knew or had reason to know that the El Dorado was stolen.[4]

**3.** The Crimes Code defines receiving stolen property as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

**4.** Appellant also contends that his possession or "receipt", of the stolen property was not proven. This claim is meritless. Appellant was behind the wheel of the El Dorado when police first noticed the

In *Commonwealth v. Williams,* 468 Pa. 357, 365–366, 362 A.2d 244, 248–49 (1976), our Supreme Court held that a fact finder may permissibly infer guilty knowledge from an accused's unsatisfactorily explained possession of recently stolen goods as well as from other circumstances. Factors to consider in determining whether the inference of guilty knowledge may properly be drawn from such possession include: "the nature and kind of goods involved, the quantity of goods, the lapse of time from theft and possession, and the ease with which such goods can be assimilated into trade channels . . . the accused's conduct at arrest and his conduct while in possession of the goods, as well as, the accused's relationship, if any, with the victim of the theft." *Id. See also, Commonwealth v. Bailey,* 250 Pa.Super. 402, 378 A.2d 998 (1977); *Commonwealth v. Simmons,* 233 Pa.Super. 547, 336 A.2d 624 (1975). Moreover, we have held that an "attempt to avoid pursuit, or flight, is some evidence of guilty knowledge." *Williams, supra* 468 Pa. at 364 n. 3, 362 A.2d at 247 n. 3. *See Commonwealth v. Phillips,* 258 Pa. Super. 109, 392 A.2d 708 (1978); *Commonwealth v. Murray,* 246 Pa.Super. 422, 428, 371 A.2d 910, 913 (1977).

■ In the instant case, appellant admitted that: (1) he was in the El Dorado with his friend only 2 or 3 hours after the car was stolen off the car lot, (2) he did not believe that White owned the car, and (3) he fled police after he knew the car was stolen. Although, according to appellant, White was to deliver the car to some one in Philadelphia as part of a work assignment, appellant and White drove around Philadelphia for at least 9 hours. Police arrested appellant, the driver, only 12 hours after the car had been stolen and found other stolen plates, tags, and owner manuals under the front

car and later during the car chase. He admitted that he and his friend White were together in the car during the previous 9 to 10 hours, stopping at a lounge and, at appellant's direction, the home of another of appellant's friends. These circumstances are sufficient for the jury to infer that appellant and White had "joint possession" of the stolen car. *See Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth v. Murray,* 246 Pa.Super. 422, 371 A.2d 910 (1977); *Commonwealth v. Franks,* 235 Pa.Super. 327, 331, 340 A.2d 456, 458 (Dissenting Opinion of PRICE, J.).

seat and in the glove compartment. The owner of Bob's Auto did not know appellant. Finally, the jury found his explanation of the incident unsatisfactory. We conclude from all of the above circumstances that the jury could be properly convinced beyond a reasonable doubt that appellant had the requisite guilty knowledge. Accordingly, we hold that the evidence was sufficient to convict appellant of receiving stolen property.

Appellant next contends that the lower court erred in admitting evidence of prior crimes to impeach the credibility of Lee, one of his witnesses.

During Lee's cross-examination, the following exchange occurred over defense counsel's objections:

"Q. Mr. Lee, have you ever been convicted of a crime?

"THE WITNESS: Yes, sir, I have been.

"Q. What crimes, Mr. Lee?

"A. Let's see, fornication and bastardy and corrupting the morals of a minor.

"Q. What else?

"A. That's all that's there.

"Q. How about larceny?

"A. I think it was receiving stolen property, if I am not mistaken.

"Q. Anything else?

"A. You might have resisting arrest there. Is that what you have there?

"Q. Anything else?

"A. Resisting Arrest.

"Q. Anything else?

"A. That's all.

"Q. How about operating a motor vehicle without the consent of the owner?

"A. Yes."

 The Commonwealth may use "prior convictions of felonies or misdemeanors in the mature of *crimen falsi* to impeach the credibility of a witness." *Commonwealth v. Katchmer,* 453 Pa. 461, 464, 309 A.2d 591, 593 (1973). *See Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976). However, fornication and bastardy is not a crime of *crimen falsi. Commonwealth v. Allen,* 220 Pa.Super. 403, 289 A.2d 476 (1972). Similarly, resisting arrest, like other crimes showing only assaultive or disorderly conduct, does not involve false statement or dishonesty. *Commonwealth v. Grimm,* 249 Pa.Super. 441, 447, 378 A.2d 377, 380 (1977). Because such crimes are irrelevant to the issue of Lee's veracity, it was error to allow their admission.[5]

 Appellant next contends that the lower court erred in admitting evidence of prior crimes to impeach him because the evidence was inaccurate, confusing, and revealed charges against appellant which did not lead to conviction.[6]

The facts are as follows:

5. Because we are remanding for new trial on another ground, we need not decide whether this error was harmless. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). We note, however, that the jury acquitted appellant of charges of burglary and theft of movable property. Both charges related to the breaking in of Bob's Auto and the theft of the El Dorado, which occurred at approximately 7:00 a. m. on July 27, 1976. Lee's alibi testimony covered that time period but did not cover any of the period during which, according to appellant's version of events, appellant and White were together in the El Dorado. Therefore, it is arguable that appellant's defense to receiving stolen property, the only crime for which he was convicted, did not depend upon Lee's testimony and credibility.

6. Appellant also contends that the conviction was too remote to be admitted. We do not reach this issue at this time because it is unclear for which crime appellant was convicted in 1972. *See* text *infra.* On remand, the lower court should conduct an *in camera* proceeding to determine the accuracy of appellant's criminal record and *then* determine whether any of his prior convictions are admissible to impeach his credibility under the standards set forth in *Commonwealth v. Perrin,* 484 Pa. 188, 398 A.2d 1007 (1979); *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).

After appellant testified and rested his case, the Commonwealth offered the rebuttal testimony of the Dauphin County Clerk of Courts to show that appellant had been convicted in 1972 "of a 1970 offense involving larceny of auto, theft by receiving stolen property and unauthorized use of an automobile." Appellant's counsel immediately objected on the ground that appellant had pled guilty only to the charge of unauthorized use. A discussion concerning what the docket indicated ensued. Offer, objection, and discussion were all at side bar. After a brief recess and again at side bar, the Commonwealth amended its offer of the Clerk's testimony to show that appellant pled guilty "back in 1972 to a charge of theft by receiving stolen property involving an automobile." Appellant's counsel again immediately objected on the grounds that (1) the docket and indictment were contradictory, (2) appellant disputed the Commonwealth claim that he pled guilty to theft by receiving, and (3) any such conviction was too remote to be admissible because the crime "occurred in 1970 when this man was a teenager." After the court overruled these objections, the Dauphin County Clerk of Courts [7] testified, *before the jury*, as follows concerning appellant's guilty plea of August 8, 1972:

"THE COURT: How did he plead?

"A. [on direct examination] Pled guilty, had a change of plea and *pled guilty to theft by receiving*.

"THE COURT: Theft by receiving.

"BY MR. ANDERSON: [Assistant District Attorney]:

"Q. What was the charge completely, theft by receiving what?

"A. I can't—I mean—

"THE COURT: Look on the indictment.

"MR. GALLOWAY [defense counsel]: If the Court please, he is not looking at this docket, he is looking at some other paper there.

"THE WITNESS: This is the indictment.

7. He is the court's custodian of all its criminal cases.

"THE COURT: That is the indictment. What did he plead guilty to, can you ascertain from your records?

"THE WITNESS: From my records, the way they read here, he pled guilty which would be—

"THE COURT: From your records, and that includes, sir, the indictment which is a part of your records.

"THE WITNESS: Right.

"THE COURT: What did he plead guilty to?

"THE WITNESS: *Well, according to my records he pled guilty to larceny, receiving stolen property, operating a motor vehicle without the consent of the owner.*

"THE COURT: On the indictment, what did he plead to?

"THE WITNESS: On the indictment?

"THE COURT: I tried four times to get this in correctly.

. . . . .

"BY MR. GALLOWAY: [on cross-examination]:

"Q. Mr. Hoffman, the book you have there is known as your docket, isn't it?

"A. Right.

"Q. That is your official record, correct?

"A. Right.

"Q. You docket does not show which of three charges Mr. Brabham pleaded guilty to, does it?

"A. I would assume all of them.

"Q. Well, that's your assumption. It doesn't say he pleaded guilty to all of them, does it?

"A. No.

"Q. It just says he pleaded guilty without saying to what?

"A. Right.

"Q. Correct?

"A. Um-hum.

"Q. Now, then you turned from your official record to an indictment, did you not? It that correct?

"A. Right.

"Q. And will you check in that indictment, when you said that he pleaded guilty to receiving—what did you say he pleaded guilty to? Theft by receiving stolen property?

"A. Right. I didn't say theft. I said receiving stolen property.

. . . . .

"Q. The indictment shows he pleaded guilty to receiving stolen property?

"A. Right.

"Q. That's off the indictment, isn't it?

"A. That's right.

"Q. That is not in your docket, it is?

"A. No.

"Q. Now then—

"THE COURT: Do you wish to explain that?

"THE WITNESS: I have no explanation. This is handled by the district attorney and the judge and this is signed with, W. H. Saye, Public Defender, but my docket entry and my clerk in the courts on their court boards said he changed his plea to guilty and we assume that that means all three charges.

BY MR. GALLOWAY:

"Q. That was an assumption?

"A. Well, I mean that's what we do in all cases. You don't make a difference so we just assume it is all three charges.

"Q. Well, of course, but the fact is now that you have seen the indictment, that doesn't—

"A. This is signed by William Saye, the Public Defender.

"Q. What are you saying, that that indictment is not a part of your records?

"A. It is part of the records all right but I am telling you who signed it. It isn't any of our writing. I don't know." (emphasis added).

Over defense counsel's objection, the assistant district attorney present at appellant's guilty plea hearing then testified that appellant pled guilty to receiving stolen property. Appellant, recalled to the stand, testified that he pled guilty only to unauthorized use of an automobile. The judge overruled defense counsel's motion to strike the testimony of the Clerk and the assistant D.A.

In *Commonwealth v. Boyd*, 463 Pa. 343, 351, 344 A.2d 864, 868 (1975), our Supreme Court stated that "[t]he prerequisites for the use of a record of prior convictions to impeach the credibility of a criminal defendant include *inter alia*, clear proof, (1) that such record is authentic and *accurate*, and (2) that the present defendant is the same person as that to whom the prior convictions refers." (emphasis added). The burden of establishing such prerequisites is upon the Commonwealth. *Id. See Commonwealth v. King*, 455 Pa. 363, 316 A.2d 878 (1974); *Commonwealth v. Young*, 418 Pa. 359, 211 A.2d 440 (1965). Although we permit the Commonwealth to impeach an accused's credibility by showing his prior convictions for crimes of dishonesty or *crimen falsi* under certain circumstances, we have long recognized the "inherent potential for prejudice" of such evidence. *Commonwealth v. Roots*, 482 Pa. 33, 41, 393 A.2d 364, 368 (1978). *See Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Given such a potential, it is essential, therefore, that a trial judge in a jury case make an initial determination, *out of the jury's presence*, that there are sufficient indicia of the accuracy of an accused's criminal record to admit it. *See Commonwealth v. Jones*, 250 Pa.Super. 98, 106, 378 A.2d 471, 475 (1977) ("Before allowing evidence of the appellant's prior conviction to be introduced, the court below conducted an *in camera* hearing in order to inquire into the factors recited by the court in *Bighum* as relevant to such a decision."); *Commonwealth v. Chandler*, 237 Pa.Super. 19, 23, 346 A.2d 579, 582 (1975) ("*Young* requires that the judge make an initial determination that there is sufficient evidence of identity as a matter of law before admitting the criminal record.").

In the instant case, the direct testimony of the Commonwealth's two witnesses reveals the confusion in the records concerning appellant's 1972 guilty plea. According to the Clerk, the official docket indicates that appellant pled guilty to three charges; larceny, receiving stolen property, and unauthorized use of an automobile. On the other hand, the indictment, which is also part of the official records kept by the Clerk, indicates that he pled guilty only to receiving stolen property. The D.A. present at the plea hearing stated that appellant pled guilty to receiving stolen property. Moreover, appellant testified that he pled guilty only to unauthorized use and denied that the signature on the indictment was his. Finally, in its cautionary instruction to the jury concerning the use of appellant's prior convictions in assessing his credibility, the court mentioned only the alleged prior conviction of receiving stolen goods.[8]

The prejudice to appellant from such confusion is obvious. Although there was considerable, albeit conflicting, evidence before the jury that appellant pled guilty to receiving stolen goods, the evidence was very inconclusive concerning appellant's possible plea to larceny and unauthorized use. *Young, supra; Chandler, supra.* The Clerk of the Court could not explain why one record reflected guilty pleas to three charges while another record indicated a guilty plea to only one charge. Unfortunately, the jury heard all of this confusing and inconclusive evidence. Because the accuracy of appellant's criminal record was never adequately established and the jury heard evidence of guilty pleas which appellant arguably never made,[9] we conclude that the admission of such evidence was prejudicial and reversible error.

Judgment of sentence reversed and case remanded for new trial.

WIEAND, J., concurs in result.

8. In addition, both the lower court in its opinion and the Commonwealth in its brief refer only to the alleged prior conviction for receiving stolen property.

9. Evidence of arrests or charges which did not lead to conviction are, of course, inadmissible. *Bighum, supra.*