Alfred ROACH,

v.

Charles H. ZIMMERMAN, and The Attorney General of the State of Pennsylvania and The District Attorney of Philadelphia.

No. 85–6817.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1987.

Alfred Roach, pro se.

Elizabeth Chambers, Asst. Dist. Atty., of Philadelphia County, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

Presently before the Court is the petition of Alfred Roach for a writ of habeas cor-

pus. For the reasons discussed below, this Court will deny the petition for a writ of habeas corpus.

## FACTS

In the Court of Common Pleas of Philadelphia County, a jury found petitioner guilty of murder in the first degree, and of possessing an instrument of crime, both offenses resulting from the shooting death of Maurice Dozier. There were several eyewitnesses to this incident. Moreover, the petitioner also testified that he had shot the victim several times.[1] A sentence of life imprisonment was imposed for the murder conviction and a suspended sentence was imposed for possessing an instrument of crime.

Through trial counsel, petitioner filed a direct appeal from the judgment of sentence for first-degree murder to the Pennsylvania Supreme Court. On appeal the petitioner contended:

1) that the Commonwealth (of Pennsylvania) created a prejudicial atmosphere at trial by suggesting to the jury that the homicide was a collective or "gang" deed;

2) that the Commonwealth improperly included irrelevant and personal inquiries in the cross-examination of the principal defense witness; *and*

3) that the Commonwealth was allowed to introduce improper rebuttal testimony that the deceased's mother called the deceased to tell him she had talked with petitioner's sister.

The Pennsylvania Supreme Court affirmed the judgment of sentence in a *per curiam* decision holding that the petitioner had waived these claims because these three issues were not raised in appellant's written post-verdict motions, as required by Pennsylvania Rule of Criminal Procedure 1123(a). Petitioner's post-verdict motions, the Pennsylvania Supreme Court explained, consisted solely of standard boiler plate challenges to the weight and sufficiency of the evidence, which were meritless. *Commonwealth v. Roach*, 477 Pa. 379, 383 A.2d 1257 (1978).

Subsequently, petitioner represented by new counsel, filed a petition for relief under Pennsylvania's Post Conviction Hearing Act (hereinafter "PCHA"), challenging trial counsel's effectiveness. After a hearing on the petition, relief was denied. The Pennsylvania Supreme Court affirmed the order denying PCHA relief. *Commonwealth v. Roach*, 495 Pa. 669, 435 A.2d 1216 (1981).

Thereafter, petitioner, represented by new counsel, filed yet another petition for PCHA relief. This petition was also denied after a hearing. The Pennsylvania Superior Court affirmed the denial. A subsequent Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on August 9, 1985. Subsequently, defendant filed the instant petition for a writ of habeas corpus.

The petitioner seeks a writ of habeas corpus on the ground that his Sixth Amendment right to the effective assistance of counsel was violated during both the criminal and the post-conviction proceedings. As an initial matter, petitioner charges that trial counsel's failure to file proper post-trial motions stripped him of grounds upon which he could challenge his criminal convictions. Specifically, petitioner contends that the trial court's refusal to allow the defendant to impeach the testimony of a government witness with a prior conviction for unlawful entry should have been advanced by trial counsel by way of post-trial motion. This, petitioner contends, would have preserved the legal issue for appeal. In the same regard, petitioner also charges that trial counsel failed to raise an objec-

---

**1.** The evidence introduced at trial reflects that on July 7, 1974 at approximately 4:00 a.m., petitioner, armed with a .22 caliber gun, shot Maurice "Pete" Dozier, four times. Dozier was wounded in the front, side and back, and died as a result of these wounds. There were several eyewitnesses to the incident; among them, the victim's cousin, who testified that he heard the first shot and saw petitioner fire the second, third, and fourth shots. Petitioner also testified that he had shot the victim several times. A jury found petitioner guilty of all charges. Petitioner's motions for a new trial and arrest of judgment were denied on September 11, 1975, by a three-judge court *en banc*.

tion to an alleged misstatement of the law made by the prosecutor during summation.

Finally, apart from the alleged ineffective assistance of counsel, petitioner charges that he was denied his constitutional right to litigate the various errors of law committed in the trial court when he was denied the right to file post-verdict motions *nunc pro tunc.* The Court will now examine the petitioner's contentions.

## I. The Effective Assistance of Counsel.

The Sixth Amendment guarantees that an accused shall enjoy the right "to have the Assistance of Counsel for his defence." Federal Courts have long recognized that an accused must receive the effective assistance of counsel if this promise of the Sixth Amendment is not to be an empty one. *See McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In those cases, such as the one at bar, where a convicted defendant presents a claim of "actual ineffectiveness," courts, state and federal, must determine whether the effective assistance of counsel had forthcome. This determination must be made in accordance with the guidelines set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland,* the Supreme Court instructed lower courts that the test used for analyzing claims of actual ineffectiveness has two components. First, a court must determine whether counsel's performance was deficient. Second, a court must determine whether the allegedly deficient performance was prejudicial to the accused's defense. A defendant claiming ineffectiveness bears the burden of establishing both deficient performance and prejudice. A defendant's failure to make both showings will restrain a court from concluding that the conviction resulted from a breakdown in the adversary process that renders the result of the criminal proceedings unreliable.[2] Each prong of the *Strickland* test will now be discussed in more detail.

*Deficient Performance*

Regarding counsel's performance, the Supreme Court in *Strickland* stated that the Sixth Amendment demands that a defendant receive reasonably effective assistance from his lawyer in defending against criminal charges. Reasonably effective assistance was defined by the Court as performance by an attorney that is reasonable under prevailing professional norms. The Court further commented that:

> Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Id.* at 688–89, 104 S.Ct. at 2065.

The Court in *Strickland* then cautioned courts of the difficulties inherent in making an evaluation of counsel's performance and then stated that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.*

*Prejudice*

Actual ineffectiveness claims alleging a deficiency in attorney performance are also subject to, as described at the outset, a general requirement that the defendant affirmatively prove prejudice. Thus, even if a defendant shows that particular errors of

---

**2.** Justice O'Connor who delivered the opinion for the Court in *Strickland* stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so un-

dermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

counsel were unreasonable, the defendant must show that they actually had an adverse effect on the defense.

More specifically, the Court in *Strickland* stated that a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. In other words, when a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt. *Id.* at 695, 104 S.Ct. at 2068–69.

In making this determination, a court must consider the totality of the evidence and bear in mind that a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors, if any, on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. 466 U.S. 696, 104 S.Ct. at 2069.

The Court has examined the record of proceedings before it and has made inquiry, as is discussed below, as outlined by the Supreme Court in *Strickland.*

### A. *Refusal to allow impeachment of government witness with an unlawful entry conviction.*

The petitioner claims that his trial counsel's performance was deficient within the meaning of *Strickland* when counsel failed, by not filing the appropriate post-trial motion, to preserve for appeal the trial court's refusal to allow the impeachment of Charles Dozier, a government witness with a conviction for unlawfully entering a building with the intent to commit a misdemeanor. This Court disagrees.

Here, the trial judge, as is described below, did not commit error by refusing to allow defense counsel to impeach Charles Dozier with this prior conviction; as this conviction was not crimen falsi.[3] Moreover, even assuming *pro arguendo* that Dozier's prior conviction was crimen falsi, no prejudice resulted to the defendant from the trial court's refusal to allow this line of cross-examination. As is described in more detail below, defense counsel's cross-examination of Charles Dozier was effective. Additionally, there is substantial evidence in the record other than Dozier's testimony to support the jury's guilty verdict. It necessarily follows that defense counsel's failure to raise this alleged error post-trial did not violate the petitioner's constitutional right to the effective assistance of counsel.

### 1. *Crimes Involving Dishonesty or False Statement*

The threshold question that this Court must decide is whether Charles Dozier's conviction for unlawfully entering a building with the intent to commit a misdemeanor constitutes a crime involving dishonesty or false statement. In Pennsylvania a witness may be impeached only with convictions of this type.[4] *See Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154,

---

**3.** Crimes involving dishonesty or false statement have also under Pennsylvania law been referred to as crimen falsi. *See, e.g., Commonwealth v. Love,* 248 Pa.Super. 387, 375 A.2d 151 (1977). "This phrase [crimen falsi] is ... used as a general designation of a class of offenses, including all such as involve deceit or falsification ... (such as) ... forgery, perjury, subornation of perjury, and offenses affecting the public administration of justice." Black's Law Dictionary 446 (4th ed. 1968) (citations omitted).

**4.** If this Court were to find that Charles Dozier's prior conviction for unlawfully entering a building with the intent to commit a misdemeanor constituted a crime involving dishonesty or false statement, then this Court would be required to find that the trial judge in the state criminal proceedings erred in not allowing defense counsel to impeach Dozier with this prior conviction. This Court would then necessarily have to assess under *Strickland* whether prejudice accrued to the defendant by his lawyer's failure to raise this error in post-trial motions and then on

*cert. denied* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Burton,* 491 Pa. 13, 417 A.2d 611 (1980); *Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978); *Commonwealth v. Futch,* 469 Pa. 422, 366 A.2d 246 (1976); *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973). This rule pertains because the avowed purpose of such impeachment is to attempt to cast doubt upon the witness' ability to speak the truth. *See Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).[5]

When deciding whether a prior conviction involves dishonesty or false statement, the Pennsylvania Supreme Court in the *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), explained that lower courts should focus on both the nature of the offense and the manner of its accomplishment before dubbing it one involving dishonesty or false statement. *See id.* 393 A.2d at 367 and n. 4.

Using the crime of larceny for purposes of illustration, the Court remarked that:

"a larceny accomplished by stealth or misrepresentation bears more directly upon [a witness'] veracity than [does] a taking by force ..."

*Id.*

The Court then added that the argument to admit the former for impeachment purposes is stronger than the argument for admission of the latter.

The fine line drawn by the Pennsylvania Supreme Court in the *Roots* illustration has served to inform courts that the decision whether to find that a particular conviction involves dishonesty or false statement or not must be decided on all of the facts and circumstances presented in each particular case. At the same time, however, the *Roots* illustration drew an important distinction between crimes accomplished through deceit and chicanery and those accomplished by force alone. While Pennsylvania courts have not followed strictly the fine distinction drawn by the Court in *Roots,* they have been guided in the decisions they have rendered in this area of the law by the spirit of the *Roots* illustration. The Court will now examine these decisions.

Pennsylvania appellate courts generally have held that crimes involving the element of theft are ones involving dishonesty or false statement. Thus, those crimes have been determined to be proper subjects for impeachment. *See Commonwealth v. Penn,* 497 Pa. 232, 439 A.2d 1154, *cert. denied* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (prior conviction for robbery involved dishonesty); *Commonwealth v. Henderson,* 497 Pa. 23, 438 A.2d 951 (1981) (prior convictions for theft and robbery were admissible to impeach credibility); *Commonwealth v. Thomas,* 484 Pa. 383, 399 A.2d 128 (1979) (impeachment of defendant with larceny conviction proper); *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745, *cert. denied,* 429 U.S. 1044, 97 S.Ct. 746, 50 L.Ed.2d 757 (1976) (impeachment of defense witness with prior convictions for burglary and larceny was proper); *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971) (impeachment of defense witness with prior conviction for burglary proper); *Commonwealth v. Gray,* 329 Pa.Super. 347, 478 A.2d 822 (1984) (witness may be impeached by showing prior conviction only if crime involved dishonesty or false statement; burglary is such a crime); *Commonwealth v. Kaster,*

---

direct appeal. However, if this Court were to make a finding, as it does, after examining the trial record that Dozier's conviction did not involve dishonesty or false statement, any further examination of the record in this case would be made to find further support for rejecting petitioner's Sixth Amendment claim.

**5.** When the Commonwealth of Pennsylvania seeks to use a prior conviction to impeach the testimony of a witness other than the defendant himself, a discretionary-balancing test, see *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum,* 452 Pa. 554,

307 A.2d 255 (1973), does not apply. The only relevant inquiry is whether the conviction was for a crime involving dishonesty or false statement. See *Commonwealth v. Gordon,* 355 Pa. Super. 25, 512 A.2d 1191 (1986). Barring exceptional circumstances which are not present in this case, the inquiry remains the same when defense counsel seeks to impeach the credibility of a prosecution witness such as Charles Dozier with a prior conviction. *See generally Commonwealth v. Mines,* 321 Pa.Super. 529, 468 A.2d 1115 (1983).

300 Pa.Super. 174, 446 A.2d 286, 288–89 (1982) (theft by receiving is a *crimen falsi* which reflect upon the veracity of a witness); *Commonwealth v. Whitner*, 278 Pa. Super. 175, 420 A.2d 486 (1980) (theft, receiving stolen property, robbery and burglary are crimes involving dishonesty).

On the other hand, Pennsylvania courts have held that convictions showing assaultive or disorderly conduct do not involve false statement or dishonesty. *Commonwealth v. Grimm*, 249 Pa.Super. 441, 378 A.2d 377 (1977). *See Commonwealth v. Burton*, 491 Pa. 13, 417 A.2d 611, 613–14 (1980); *Commonwealth v. Brabham*, 268 Pa.Super. 35, 407 A.2d 424 (1979); *Commonwealth v. Ashmore*, 266 Pa.Super. 181, 403 A.2d 603 (1979).

In the *Commonwealth v. Grimm*, the Pennsylvania Superior Court held that evidence showing prior convictions of two defense witnesses was inadmissible for impeachment purposes where one defense witness had been convicted for an unrelated aggravated assault and the other for disorderly conduct; the disorderly conduct conviction arising from the same incident which gave rise to the charges against the defendant. The court held that these crimes did not involve false statement or dishonesty as they were "completely irrelevant to the issue of the witnesses' veracity." *Grimm*, 378 A.2d at 380.

Likewise, in the *Commonwealth v. Brabham*, the Superior Court held that "resisting arrest, like other crimes showing only assaultive or disorderly conduct, does not involve false statement or dishonesty." *Brabham*, 407 A.2d at 429.

Finally, in the *Commonwealth v. Ashmore*, the Superior Court found in a prosecution for rape, that the defendant failed to demonstrate how a prosecution witness' conviction for assault with intent to kill related to his ability to speak the truth. Thus, the court, by excluding evidence of this prior conviction, in essence held that the crime of assault with intent to kill does not bear upon a witness' veracity as a matter of law.

Against this legal backdrop, the Court will now consider the facts and circumstances presented for decision in this case.

Here defense counsel sought to impeach Charles Dozier, an eyewitness to the murder, who as related above was the first witness called to testify for the prosecution, with Dozier's prior conviction for unlawfully entering a building with the intent to commit a misdemeanor.

While at first glance, Dozier's prior conviction appears to fall into the theft crime category, a close examination of the record in this case reveals that the crime Dozier committed was one of force and violence; a crime that has been described by the Pennsylvania courts as one involving assaultive and disorderly conduct.

The record shows that Charles Dozier was convicted of the crime of unlawfully entering his mother-in-law's home on 722 North Preston Street with the intent of committing the misdemeanor of aggravated assault and battery on her. See Record Transcript (hereinafter "R.T.") at 52–55. The prosecution related to the court that Dozier pulled up to his mother-in-law's home, entered it and engaged his mother-in-law in a fight "in which he was stabbed." R.T. 52.

The trial court, mindful that this episode did not involve the element of theft, *see* R.T. 52–53, ruled, after viewing Dozier's criminal record, that the conviction would not be a proper subject for cross-examination.

By preventing defense counsel from introducing Dozier's prior conviction into evidence for purposes of impeachment, the trial court was in essence ruling that no element of dishonesty or false statement attended the commission of this crime. This ruling is in accordance with the Pennsylvania decisions described above. *See, e.g., Commonwealth v. Grimm*, 249 Pa.Super. 441, 378 A.2d 377 (1977). Thus, counsel's failure to pursue this issue first posttrial and then on direct appeal cannot constitute a Sixth Amendment violation where the trial court properly ruled that Dozier's prior conviction was not a proper subject for cross-examination.

### 2. *Prejudice*

■ Even if the Court were to assume *arguendo* that the trial court erred when it

precluded defense counsel from impeaching Charles Dozier with his prior conviction and that defense counsel should have raised this error in post-trial motions and then on direct appeal, petitioner's Sixth Amendment claim still fails. Petitioner's Sixth Amendment claim failed because he cannot prove on this record that "there is a reasonable probability that, but for [counsel's error], the result of the proceeding would have been different." *Strickland,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

No prejudice accrued to the petitioner because defense counsel's cross-examination of Charles Dozier was most effective. Moreover, there is overwhelming record support for the guilty verdict rendered in this case. *See Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. The Court will examine these aspects in turn.

### a. *The Cross–Examination of Charles Dozier*

Defense counsel's cross-examination of Charles Dozier during the trial was most effective. Defense counsel at the outset established Charles Dozier's possible bias by reinforcing the fact that Dozier was the victim's cousin. R.T. 45.

Then, defense counsel made a most able attempt to contain Dozier's testimony— that is, the testimony relating that he had heard the first gun shot and then saw the petitioner fire the second, third and fourth gun shots. Defense counsel did this by challenging Dozier's ability at that time to perceive accurately the events that took place. Defense counsel established that Dozier just prior to the shooting was intoxi-

cated from consuming alcohol. R.T. 49–51. Moreover, defense counsel was able to show that Dozier was not continuously paying attention to the confrontation that took place between the petitioner and the victim. R.T. 69–71. Defense counsel, for example, inquired:

Q. Mr. Dozier, what were you doing inside of the car all this time?

A. I was talking to Sylvia, that was the girl that was in there.

Q. You were talking to Sylvia?

A. Yes, I was.

Q. So it would be fair to say you weren't at all times paying attention to what was going on?

A. That would be fair to say because you can't pay attention to everything outside of the car all the time.

R.T. 69–71.

Dozier's credibility was also attacked effectively on cross-examination when defense counsel established that Dozier gave testimony on direct examination that was inconsistent with a prior statement that he had given to the police during the early morning hours after the shooting. R.T. 71–79. Moreover, this prior statement, that defense counsel referred to on cross-examination, was shown to be consistent with the defendant's theory of self defense.[6]

### b. *The Trial Record*

The record reveals that there were several eyewitnesses to the offense. Moreover, the petitioner at the trial never contested the fact that he killed the victim. The theory pursued by the petitioner at trial was one of self-defense.

---

6. The colloquy between defense counsel and the witness took place as follows:

Q. Do you remember telling anybody down at 8th and Race [the police headquarters] that Pete (Maurice Dozier) was carrying a big knife.

A. No, I don't remember telling anybody anywhere that Pete was carrying a big knife.

Q. Do you remember signing a statement down at 8th and Race?

A. I remember signing a statement that I gave to the police, yes, I do.

. . . . .

R.T. 73.

. . . . .

Q. Well, let me ask you if you remember this portion of your statement. I am referring to the second page that you looked at.

A. I read the whole statement, yes.

Q. ... (reading from this statement) ... Pete was out late last night. And when he went in, he told me that Valerie (Maurice Dozier's girl friend and Alfred Roach's sister) had given him some shit and he beat her ass. All day long he had been carrying a big knife because Valerie's brother [Alfred Roach] and her cousin was after him."

R.T. 75.

The testimony of Commonwealth witness, Eugene Hall, corroborated that of Charles Dozier. Hall testified that petitioner was at the scene of the crime talking with the victim, that he heard the gunshots, saw the victim fall, and saw the petitioner running away from the scene. R.T. 113–125.

### c. Conclusion

Where defense counsel's cross-examination of Charles Dozier was most effective and where there is solid record support for the guilty verdict rendered in this case, the failure of trial counsel to pursue post-trial the lower court's refusal to allow him to impeach Charles Dozier with the unlawful entry conviction may very well have been sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. However, under these circumstances, where the petitioner has been unable to show that trial counsel's failure to pursue this alleged error prejudiced him in any manner, this Court does not have to reach the question of deficient performance. *Id.* at 694, 104 S.Ct. at 2068. Where the petitioner has been unable to demonstrate that there is a reasonable probability that, absent the error, the result of the proceeding would have been different, this Court rejects on this ground the petitioner's Sixth Amendment claim. 466 U.S. at 694, 104 S.Ct. at 2068.

### B. Trial Counsel's Failure to Object to the Prosecution's Summation.

■ In the state court, petitioner claimed that trial counsel was also ineffective for failing to object to the prosecution's state-ment, in its closing argument to the jury, that "where an individual causes serious bodily injury, intentionally wounds or injures another with the intent to cause serious bodily injury to a vital part of his body, malice is presumed." R.T. 491, 500–501.[7] *See Commonwealth v. Gwaltney*, 479 Pa. 88, 93–94, 387 A.2d 848 (1978). (Counsel are permitted to discuss applicable law to the jury.)

The prosecution's comments were accurate and unobjectionable at least at the time they were made in April, 1975. *See Commonwealth v. O'Searo*, 466 Pa. 224, 236, 352 A.2d 30 (1976); *Commonwealth v. White*, 442 Pa. 461, 463–464, 275 A.2d 75 (1971).[8] Moreover, the trial court very clearly and distinctly stated to the jury that they were "bound by [his] instructions on the law. Even if you heard sometimes the law stated in another way, you still must apply the law as I give it to you." R.T. 510.

The Court also went on to charge the jury that they might "infer" that petitioner "intended the probable and ordinary consequences" of his actions, and that malice and intent to kill might be "inferred" from the circumstances of the crime. R.T. 518–519. This charge served to protect sufficiently the petitioner's interests at the trial.

As counsel cannot be found ineffective for failing to pursue a meritless claim, petitioner's Sixth Amendment claim in this regard must be rejected.[9]

### II. Petitioner was not Denied Right to Litigate the Trial Errors he has Identified.

■ Petitioner claims that the Commonwealth of Pennsylvania has denied him the

---

**7.** Petitioner also claims that prior PCHA counsel was ineffective for failing to raise this issue. This claim, as is the similar charge against trial counsel, is without merit.

**8.** Although more recent cases use the word "infer" as opposed to "presume," at the time of this trial, "presume" was the acceptable word. In fact, it was approximately one year after this trial that the Pennsylvania Supreme Court in *Commonwealth v. O'Searo*, 466 Pa. at 238, 352 A.2d 30, stated that "presumption" and "inference" meant the same thing in this situation, but stated a preference for the use of the word "inference."

**9.** With respect to the post conviction proceedings, petitioner also charges that the lawyer who handled his first petition for relief under the PCHA failed to raise even one issue concerning trial counsel's ineffectiveness during these proceedings or to raise otherwise issues of arguable merit. Because this Court has found trial counsel's performance neither ineffective nor prejudicial to petitioner's cause, petitioner's claim must be rejected because PCHA counsel cannot be found ineffective for failing to pursue meritless claims.

right to an appeal by refusing to permit him to file post-trial motions *nunc pro tunc.* This claim is without merit.

In this case petitioner did have available to him the right to a direct appeal, which he pursued to completion. Petitioner also had available to him and pursued two actions under the Pennsylvania Post Conviction Hearing Act. In his second action brought under PCHA, petitioner raised the two allegations of ineffectiveness that this Court has discussed above. During the prosecution of petitioner's second Post Conviction Hearing Act action, Judge Blake, at the trial court level, considered and denied these claims on the merits. *See* Respondent's Response to Petition for Writ of Habeas Corpus at Exhibit A. Moreover, on appeal, the Pennsylvania Superior Court specifically noted that the claims were without merit. *See* Respondent's Response to Petition for Writ of Habeas Corpus at Exhibit B, p. 4 & n. 1. These claims were also included in the petitioner's Petition for Allowance of Appeal that was denied by the Pennsylvania Supreme Court. *See id.* at Exhibit C.

Additionally, petitioner was given a hearing during the prosecution of his Post Conviction Hearing Act claims during which he had an opportunity to present any evidence relevant to the merit of the claims he asserted. Thus, the Commonwealth of Pennsylvania did not deny to petitioner the opportunity to litigate his claims. "That the intermediate appellate court found a waiver does not amount to the denial of the right to appeal, particularly where, as here, that Court has also determined that petitioner's claim lacks substantive merit." Respondent's Response to Petition for Writ of Habeas Corpus at p. 10. Thus, this claim must be rejected.

III. Conclusion.

For the reasons described above, the petition of Alfred Roach for a writ of habeas corpus will be denied.