J-S35009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DETRICK DARNELL POOLE | |
| Appellant | No. 1159 WDA 2016 |

Appeal from the Judgment of Sentence June 9, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001223-2015

BEFORE: LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED AUGUST 10, 2017**

Detrick Darnell Poole appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Erie County, following the denial of his post-sentence motion. In 2016, Poole was convicted by a jury of receiving stolen property (RSP),[2] possession of drug paraphernalia,[3] possession with

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although Poole filed his notice of appeal from the July 5, 2016 order denying his post-sentence motions, we have amended the caption to reflect that the appeal is technically taken from the judgment of sentence. **See Commonwealth v. Chamberlain**, 658 A.2d 395 (Pa. Super. 1995) (order denying post-sentence motion acts to finalize judgment of sentence; thus, appeal is taken from judgment of sentence, not order denying post-sentence motion).

[2] 18 Pa.C.S.§ 3925(A).

[3] 35 P.S. § 780-113(a)(32).

intent to deliver[4] and simple possession.[5] After careful review, we vacate Poole's judgment of sentence on the RSP conviction[6] and remand for resentencing.

The trial court set forth the facts of the case as follows:

The convictions arose from eyewitness testimony that on March 21, 2015, near 10th and Raspberry Streets in Erie, Pennsylvania, [Poole] was in an altercation outside his upstairs apartment at 1110 Raspberry Street; [Poole] hurriedly entered the residence, and returned outside brandishing an AK[-]47 rifle; [Poole] fired numerous shots in the air with the weapon and ran back into the residence; [Poole] exited the residence once again, this time without the weapon, got into a vehicle and drove away, heading north on Raspberry Street.

City of Erie Police were dispatched to the area based upon a call about a domestic incident, and shots fired in the air. When Officer James Cousins arrived, he observed approximately one dozen people standing in the road, very excited and yelling. They indicated to the officer the shooter had just left the residence and was headed in a silver vehicle across 11th Street. The officer quickly looked down 11th [S]treet and spotted a silver vehicle traveling down the street. The officer proceeded after the vehicle, activating the lights and sirens on the patrol vehicle. Initially, [Poole] did not slow his vehicle, and the officer increased his speed to keep up with [Poole]. When [Poole] finally pulled over, Officer Cousins conducted a felony stop. He approached the vehicle with his weapon drawn and ordered [Poole] to show his hands out the window. Instead of heeding the officer's commands, [Poole] opened the door and began to exit the vehicle. The officer repeatedly ordered [Poole] to remain in the vehicle and show his hands. Eventually, [Poole]

___

[4] 35 P.S. § 780-113(a)(30).

[5] 35 P.S. § 780-113(a)(16).

[6] All other judgments of sentence on Poole's remaining convictions are affirmed.

complied. Officer Cousins next directed [Poole] to exit the vehicle and go to the ground. [Poole] refused, and instead re-entered the vehicle. When [Poole] finally exited the vehicle, despite further repeated orders, he refused to go to the ground. Once Officer Cousins enlisted the assistance of a passerby, [Poole] became more compliant, and he was arrested.

That evening, pursuant to a search warrant, five police officers entered [Poole's] residence and conducted a search. The police found a 9 mm handgun, reported as stolen, [in the drawer of][7] an entertainment center in the residence. An AK[-]47 rifle was found under the mattress of a child's bedroom. The police found powder cocaine and crack cocaine in the residence. Police also recovered clear sandwich-style plastic bags and a spoon with white powdery residue on it, and ties for knotting off the bags. Based upon the quantity of the cocaine recovered from the residence, and the absence of evidence of means to ingest cocaine, other than a spoon that was found, the police concluded the cocaine was possessed with the intent to deliver or sell. Detective Michael Chodubski, sergeant of the vice and narcotics division of the City of Erie Police Department and an expert in determining whether illicit drugs are used for consumption or delivery, testified to the violent nature of the drug-dealing business; the practice of drug dealers in using firearms to protect their proceeds and inventory; and his experience that firearms and drug-dealing go hand-in-hand.

[Poole's] mail was found at the residence, indicating [Poole] lived there. In a recorded telephone conversation between [Poole] and his mother on March 22, 2015, [Poole] acknowledged the residence was his. [Poole] also told his mother, "I got caught with an AK[-]47 and a nine, the nine Hi-point."

William Miller identified the 9mm handgun as one of two guns that were stolen from his vehicle on July 14, 2014, while the

_____

[7] While the trial court's opinion indicates the 9mm was found "**on** an entertainment center," Trial Court Opinion, 10/31/16, at 2 (emphasis added), at trial Officer Cheryl Frey testified that she found the gun "in a drawer that [she] pulled out" in the entertainment center. N.T. Jury Trial, 3/15/16, at 40.

vehicle was parked outside a convenience store at 10th and French Streets in the City of Erie.

On July 23, 2015, [Poole] filed an Omnibus Pre-Trial Motion seeking suppression of evidence seized from the residence at 1110 Raspberry Street, Apartment No. 2, Upstairs, including crack cocaine and the AK[-]47 Assault Rifle. [Poole] asserted the search warrant was unconstitutional and overbroad, and the identity and reliability of the eyewitnesses who provided information to the police officers was not established. The parties submitted briefs, and a hearing on the suppression motion was held before the Honorable Shad Connelly, then President Judge, in August, 2015. . . . On December 23, 2016, Judge Connelly denied [Poole's] Omnibus Pre-Trial Motion to Suppress Evidence.

Trial Court Opinion, 10/31/16, at 1-4.

A two-day jury trial was held on March 15-16, 2016. At the close of the Commonwealth's case, the Commonwealth withdrew Count 1 (possession of a firearm)[8] and amended Count 4 (possession of a controlled substance) to a misdemeanor offense. Poole moved for a judgment of acquittal on the RSP charge; the court denied the motion. Poole was found guilty of the above-mentioned crimes and, on June 9, 2016, was sentenced to an aggregate term of 11½ months to 23 months of incarceration.[9] Poole

_____

[8] On January 8, 2016, the Court severed the charge at Count One – Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms (9 mm handgun), from the remaining charges.

[9] Poole was sentenced on each count as follows: RSP - count 2 (11½ to 23 months' incarceration, followed by 5 years of probation); possession with intent to deliver – count 3 (6 months to 23 months' incarceration concurrent to count 2); possession of a controlled substance – count 4 (1 year of probation consecutive to counts 2 and 3); and possession of drug paraphernalia – count 5 (1 year of probation, concurrent to count 4).

filed timely post-sentence motions that were denied on July 5, 2016. This timely appeal follows, in which he raises the following issues for our consideration:

(1) Did the Commonwealth present insufficient evidence to sustain [Poole's] conviction for receiving stolen property where the evidence does not establish the element that [Poole] knew or should have known the 9[mm] was stolen?[10]

(2) Did the suppression court err by denying [Poole's] motion to suppress the evidence seized at 1110 Raspberry Street, Apartment 2[,] where the search warrant did not identify the items to be seized with particularity and where the accompanying affidavit did not provide probable cause to conclude that the items would be discovered at that location?[11]

_____

[10] The standard of review for a challenge to the sufficiency of the evidence is de novo, but the scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Robinson*, 128 A.3d 261 (Pa. Super. 2015) (en banc). Evidence is sufficient if it can support every element of the crime charged beyond a reasonable doubt. *Id.* The trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *Id.*

[11] When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. If the evidence supports the trial court's findings, we are bound by them and may reverse only if the legal conclusions drawn therefrom are erroneous. *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa. Super. 2004).

Poole first contends that the Commonwealth failed to prove that he possessed the mens rea for RSP or, namely, that he knew the 9mm handgun to be stolen or believe that it probably was stolen.

The crime of receiving stolen property is defined as follows:

**§ 3925. Receiving stolen property**

(a) Offense defined.--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S. § 3925(a). *See Commonwealth v. Young*, 35 A.3d 54, 63 (Pa. Super. 2011) (identifying elements of RSP as: "(1) intentionally acquiring possession . . . of movable property of another; (2) **with knowledge or belief that it was probably stolen**; and (3) intent to deprive permanently.") (emphasis added).

A person "knows" that goods are stolen if he is "aware" of the fact. *Commonwealth v. Newton*, 994 A.2d 1127 (Pa. Super. 2010). The Legislature expressly defined the required mental state, under section 3925, as "knowing" or "believing." *Robinson*, 128 A.3d at 265 (citations omitted). When there is no direct proof that the defendant knew, for a fact, that the item or good was stolen, the guilty knowledge may be inferred from circumstantial evidence. *Commonwealth v. Pruitt*, 951 A.2d 307 (Pa. 2008).

Circumstantial evidence of guilty knowledge may include: the place and manner or possession; alterations to the property indicative of theft; the defendant's conduct or statements at the time of the arrest (including attempts to flee apprehension); a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession; the value of the property compared to the price paid for it; or any other evidence connecting the defendant to the crime. **Robinson**, 128 A.3d at 268. Mere possession of stolen property, without more, however, is not sufficient circumstantial evidence to support an inference of guilty knowledge. **Commonwealth v. Williams**, 362 A.2d 244 (Pa. 1976); **Commonwealth v. Foreman**, 797 A.2d 1005 (Pa. Super. 2002).

Here, Poole contends that the Commonwealth did not present any direct or circumstantial evidence sufficient to show that he knew or believed the 9mm handgun was stolen.

In the instant case, because the gun was stolen from its owner approximately eight months before it was discovered in the Raspberry Street apartment, the recency element for purposes of inferring guilty knowledge for RSP is lacking. **See Commonwealth v. Stover**, 436 A.2d 232, 233-34 (Pa. Super. 1981) (possession thirty-seven days after theft of automobile was not recent); **Commonwealth v. Caesar**, 369 A.2d 341, 344 (Pa. Super. 1976) (guilty knowledge would be "conjectural at best" where theft of automobile occurred four weeks prior).

Instantly, the trial court concluded the guilty knowledge element of RSP was proven through the following circumstantial evidence: Poole fled from the apartment when the police were initially called, requiring them to conduct a felony traffic stop; Poole's uncooperative and evasive behavior when officers attempted to pull his vehicle over on the roadway; Poole's failure to follow the officers' repeated commands when attempting to arrest him; the 9mm handgun found in the same residence as illegal narcotics and drug paraphernalia which is indicative of the fact that drug dealers use weapons to protect drug and drug proceeds; Poole's conversation with his mother that "[he had been] caught with an AK[-]47 and a nine, the nine Hi-point;" and Poole's lack of explanation for presence of stolen handgun.

First, we note that because the handgun had not been recently stolen when it was recovered from Poole's apartment, it was not necessary that Poole provide an explanation for his possession of the stolen item. **Robinson**, **supra**. Second, merely because Poole told his mother that the police had caught him with two weapons does not necessarily infer his guilty knowledge of the stolen nature of the 9mm; his remarks could have been made in response to the criminal charges (possession of a firearm (prohibited)) that had been filed against him. **See Commonwealth v. Stevenson**, 363 A.2d 1144 (Pa. Super. 1976) (reasonable inference of guilt must be based on facts and conditions proved; it cannot rest solely on suspicion or surmise).

While an "attempt to avoid pursuit, or flight, is some evidence of guilty knowledge," *Commonwealth v. Brabham*, 407 A.2d 424, 427 (Pa. Super. 1979) (citations omitted), here Poole fled from his apartment, after discharging the AK-47 in the air on the street, *before* the officers responded to the scene. Although Poole intentionally evaded the officers as they attempted to stop his vehicle and repeatedly ignored their commands to surrender, we cannot say that this behavior infers his guilty knowledge of the stolen nature of the handgun found back in his apartment. Moreover, while the stolen item was clearly found in Poole's residence, it is well established that possession alone cannot support the mens rea necessary to prove RSP. *Williams*, *supra*; *Foreman*, *supra*. Under these circumstances, we cannot conclude that the Commonwealth provided sufficient circumstantial evidence to infer Poole's guilty knowledge that the 9mm handgun was stolen. *Robinson*, *supra*. Thus, we vacate Poole's judgment of sentence for his RSP conviction.

Poole also asserts that the trial court erred in suppressing the evidence obtained during a search of the Raspberry Street apartment where the affidavit "did not identify the items to be seized with particularity and where the search warrant did not provide probable cause to conclude that the items would be discovered at that location." Appellant's Brief, at 29.

Pennsylvania Rule of Criminal Procedure 205 provides, in part, that a search warrant "shall be signed by the issuing authority and shall: (1) specify the date and time of issuance; (2) identify specifically the property to

- 9 -

be seized; (3) name or describe with particularity the person or place to be searched; (4) direct that the search be executed either . . . (a) within a specified period of time, not to exceed 2 days from the time of issuance[;] . . . [and] (5) direct that the warrant be served in the daytime unless otherwise authorized on the warrant[.]"  Pa.R.Crim.P. 205.  Paragraphs (2) and (3) of Rule 205 are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant.  *See* Pa.R.Crim.P. 205, Comment.   Such warrants should be read in a common sense fashion and should not be invalidated by hyper-technical interpretations.  *Id.*  Moreover, a practical, common-sense approach should be taken in determining whether the place to be searched is specified with sufficient particularity. *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016), citing *Commonwealth v. Carlisle*, 534 A.2d 469 (Pa. 1987).

Here, the search warrant identifies the following items to be searched for and seized:  "Any and all firearms and all other items associated to [sic] their operation." Search Warrant and Authorization, 3/21/15.  The warrant describes the premises to be searched as follows:

> Address of 1110 Raspberry Street[,] Apartment #2, upstairs. The door to this multi[-]dwelling building for 1110 Raspberry #2 is on the left side of the house facing Raspberry Street.  It has a glass [window] in the middle of a wooden door, the home is grey vinyl siding with white trim.  It has a front and back staircase.

*Id.*  The accompanying affidavit of probable cause indicates that:

- 10 -

> Poole was seen by several witnesses beating a female at the corner of 10th and Raspberry at approximately 1930 hours. Poole was then confronted by a w[hite] m[ale], then ran to the residence of 1110 Raspberry Street and went inside, Poole came back outside immediately with a large, semi-automatic weapon, resembling an AK[-]47 and shot it randomly about 8-12 times[,] startling all of the neighbors in the area and putting several neighbors and witnesses in imminent fear of serious bodily injury. Approximately 20 people were shouting when police arrived in the area telling us which way the suspect went and the vehicle description. Defendant was positively identified by 3 witnesses.

Affidavit of Probable Cause, 3/21/15.

Poole contends that nowhere in the affidavit of probable cause does it mention Apartment #2 of 1110 Raspberry Street or the upstairs apartment, nothing in the four corners of the affidavit indicates that Pool ran back into the apartment before he fired the random shots on the street, and that only unidentified witnesses provided the probable cause to support issuance of the warrant.

Here, the sources of the information forming the basis of the warrant were eyewitnesses who first-hand watched Poole beat a female, be confronted by a male, make threatening statements to that male, run into a specific apartment, emerge with an assault weapon, and fire the weapon randomly into the air. Because there is no question that the witnesses watched Poole carry out these acts, they provided sufficient probable cause to support the warrant. ***Commonwealth v. Torres***, 764 A.2d 532, 537 (Pa. 2001) (internal citation and quotations omitted) (in considering affidavit of probable cause, issuing magistrate must apply "totality of the

- 11 -

circumstances test" which requires her to "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

Moreover, the fact that the search warrant generally refers to "any and all firearms" does not make it so overbroad or non-specific to render it invalid. Here, where Poole emerged from his apartment with an AK-47, firing it into the air in the presence of several eyewitnesses, it is reasonable to believe that Poole was more likely than not in possession of additional firearms in his home. Additionally, the items to be seized are related to the crime he was witnessed committing. *See Commonwealth v. Gannon*, 454 A.2d 561, 565 (Pa. Super. 1982) ("The critical element in a reasonable search is not that the owner of the property is suspected of [a] crime but that the specific 'things' to be searched for and seized are located on the property to which entry is sought.") (citation omitted).

Finally, we conclude that the seizure of drugs from Poole's apartment was valid under the plain view doctrine. The drugs were discovered during the police's lawful search for firearms and ammunition in accordance with the search warrant, the incriminating nature of the drugs was readily apparent and in plain view within the apartment and the officers reasonably concluded that ammunition or firearms could be hidden under a mattress, underneath the cushions of a sectional couch, and in the drawer of an

entertainment center. *See Commonwealth v. Anderson*, 40 A.3d 1245 (Pa. Super. 2012); *Commonwealth v. Santiago*, 736 A.2d 624, 633 (Pa. Super. 1999). Thus, we find the trial court did not err in failing to grant Poole's motion to suppress. *Blair*, *supra*.

Judgment of sentence for RSP conviction vacated. Case remanded for resentencing.[12] Jurisdiction relinquished.

Judge Ransom joins the Memorandum.

President Judge Emeritus Stevens files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2017

---

[12] *Commonwealth v. Deshong*, 850 A.2d 712 (Pa. Super. 2004) (if appellate court's disposition alters sentencing scheme of trial court, it must vacate sentence and remand for resentencing).